AUBREY LEE NICKELS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed July 21, 1923.

Petition for Rehearing Denied October 13, 1923.

Petition for Rehearing Granted December 4, 1923.

Opinion on Rehearing Filed February 2, 1924.

1. The writ of error *coram nobis* which issues for the correction of a judgment entered in ignorance of certain matters of fact which if they had been known to the court rendering the judgment it would not have been entered, will not be allowed as of course, but only upon its being made to appear with reasonable certainty that there has been some error of fact in the trial of the cause which had it been known to the court the judgment would not have been entered.

2. A writ of error *coram nobis* will not reach facts actually determined in the original proceedings; nor will it lie when a proper remedy is afforded by appeal or ordinary writ of error, nor for false testimony at the trial, nor newly discovered evidence. (*Quere*: Whether the discretion of the trial judge in refusing the writ is reviewable.)

3. Section 2810 Revised General Statutes, which provides when and how motions for new trials may be made and the effect of same, applies to an extraordinary motion for a new trial made after the term at which the trial was had.

4. Recitals in a motion for a new trial are not evidence of the facts stated therein; nor should the motion be granted upon the unsupported affidavit of the defendant when it rests upon the ground of newly discovered evidence.

5. The refusal to grant a motion to take testimony in support of an extraordinary motion for a new trial in a criminal case which was made after the term of the court at which the trial was had is not error.

6. Section 2674, Revised General Statutes, relating to the disqualification of a judge on account of prejudice against the accused requires the affidavit of the defendant to state the facts and the reasons for the belief that any such bias or prejudice on the part of the judge exists and requires that the facts stated as a basis for making the affidavit shall be supported in substance by affidavit of at least two reputable citizens of the county not of kin to the defendant or of counsel for the defendant.

## On Application for Rehearing.

1. The functions of a writ of error *coram nobis* are limited to an error of fact for which the statute provides no other remedy, which fact did not appear of record or was unknown to the Court when judgment was pronounced, and which, if known, would have prevented the judgment, and which was unknown and could not have been known to the party by the exercise of reasonable diligence in time to have been otherwise presented to the Court, unless he was prevented from so presenting them by duress, fear, or other sufficient cause.

2. The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact

existed which, if before the court, would have prevented the rendition of the judgment, and which, without any fault or negligence of the party, was not presented to the court.

3. Where the accused in a criminal prosecution is forced, through well-grounded fear of mob violence, to plead guilty to the criminal charge, he has a right to relief from such sentence and plea by an action or proceeding in the same court in the nature of a writ of error *coram nobis*.

4. A writ *coram nobis* will lie when it is necessary for the accused to bring some new fact before the court which cannot be presented in any of the methods provided by statute, but it will not lie in cases covered by statutory provisions.

5. A plea of guilty, forced from an accused by a well-grounded fear of mob violence, will not sustain a judgment of conviction when properly attacked.

6. A sentence pronounced on a plea of guilty, forced from an accused by a well-grounded apprehension of mob violence, may be set aside in a proceeding in the nature of a writ *coram nobis*.

7. A defendant who enters a plea of guilty upon a necessity, produced by well-grounded fear and imminent danger of mob violence, may avoid the plea by a proceeding in the nature of a writ *coram nobis*.

8. The writ of error *coram nobis* may issue after the trial term has expired.

9. A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance. Accordingly, it will not bind the defendant where it is entered through intimidation, however slight; and a judgment is not properly entered on it where the court does not satisfy itself of the voluntary character of the plea.

10. Where on writ of error to a final order denying a writ of *coram nobis*, the record discloses some substantial matters that may fairly tend to corroborate the affidavit of the defendant that he pleaded guilty to a capital offense because of fear that he would be killed, which is a ground for a writ of *coram nobis*, and such corroborating matters were not particularly referred to by counsel at the hearing on writ of error, and were perhaps not fully weighed and considered by the court in affirming the final order, a rehearing will be granted upon the question whether the transcript of the record duly shows that the plaintiff in error pleaded guilty under such fear or duress as to render the plea a nullity, and the subsequent proceedings on the indictment invalid.

## On Rehearing.

1. A plea of guilty in a criminal prosecution should be entirely voluntary by one competent to know its consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence or ignorance and should be entered without a semblance of coercion and without fear or duress of any kind.

2. Where on an application to the trial court for a writ of error *coram nobis*, it reasnably appears from the evidence adduced, that the accused was misled into believing that only the 'death penalty could legally be imposed on him after a verdict of guilty of rape without recommendation to mercy by the jury; and that his surroundings were such that he reasonably may have believed and feared that his life was in imminent danger of fatal mob violence if he did not plead guilty; and that by pleading guilty he had a chance of a sentence to life imprisonment, it sufficiently appears that a plea of guilty entered by the defendant at the trial was not entered with a full appreciation of its consequences and was not voluntary and without fear, but was entered because of fear, misapprehension, ignorance or inadvertence, which would render the plea and the subsequent proceedings of the trial court null and void, on which showing the writ of *corath nobis* should have been issued.

A Writ of Error to the Circuit Court for Volusia County; James W. Perkins, Judge.

Reversed.

*James H. Bunch,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, *J. B. Gaines,* Assistant Attorney General, and *George A. DeCottes,* State Attorney, for the State.

ELLIS, J.—During the month of December, 1921, a young man about twenty-one years of age named Aubrey Lee Nickels came to the City of DeLand in this State. What business, occupation or trade he had the record does not disclose, but it does divulge the information that he soon formed an illegitimate traffic relation with one Robert Robinson called the "Hunchback" who had a lunch counter and cool drink stand in the city. The relation was that of purchasing agent for the "Hunchback" of "moonshine" whiskey for which purpose the "Hunchback" supplied Nickels with about one hundred and eighty-five dollars. Having obtained the money,. he inquired of his patron for information concerning "sporting" women and was directed by that person to the prosecutrix. Having located her residence he effected an entrance under the false representation of being a plumber and desired to examine the water pipes for a pretended leak. After gaining an entrance into the house which he did by deceiving Mrs. Moore the occupant of the house and prosecutrix in this case, he inveigled her into the bath room under pretense of showing her the leaks and instructing her how to obtain the usual water supply without causing it to spray upon the varnished floor. When she came

to the bath room he locked the door, struck her several times until she became unconscious and then effected his purpose of having sexual intercourse with her. When he completed that offense he tied his victim to a water pipe, went through the house, stole several pieces of jewelry consisting of rings and gold watches and left the house. According to his own story he effected his escape, from the sheriff and a posse which had been organized to assist the sheriff in finding him and arresting him, by the assistance of the "Hunchback" who concealed him until dark and then took him to Sanford where he boarded a train for Jacksonville. He was arrested in that city a short while after his arrival and identified by means of the stolen jewelry as the rapist who had fled from DeLand. Upon being confronted by the charge he confessed his guilt after being fully warned of the consequences of such confession and through no fear of injury nor hope of reward so far as any influence was exerted by those to whom he confessed was concerned.

On the 12th of April, 1922, Nickels was indicted by the grand jury of Volusia County for the rape upon Mrs. Moore. And on May the 1st, was arraigned and pleaded "not guilty." Not having procured counsel two members of the Daytona bar were assigned by the court to represent him. During the afternoon when the case was called for trial the defendant expressed a desire to withdraw his plea of not guilty and plead guilty to the indictment. After the fullest examination of the defendant by both Court and State Attorney as to the defendant's purpose in pleading guilty and as to his knowledge of the consequences of such plea, he was permitted to withdraw his plea of not guilty and interpose the plea of guilty.

The Court then took the testimony as to the circumstances. The testimony of Mrs. Moore was taken as to the

assault and the pretense under which the defendant secured an entrance into the house, the testimony of Mr. Moore, the husband of the prosecutrix, as to the condition of the house which had been ransacked for valuables, the torn condition of Mrs. Moore's clothing and bruises upon her body, particularly upon her legs and thighs and face, was taken, and the testimony of police officials of the City of Jacksonville and the Official Court Reporter of the Fourth Judicial Circuit as to the details and circumstances of the defendant's full, free and voluntary confession of his crime to the State Attorney.

When all this was done the Court sentenced the prisoner to death.

In November, 1922, nearly seven months after the judgment of the Court was entered, the defendant through counsel who had been employed in his behalf in the City of Jacksonville moved the Court for a writ of error *coram nobis*. The motion which contained the alleged grounds for the issuing of such a writ was sworn to by the defendant. To it was also attached the affidavits of Mr. Brass and Mr. Green, the two attorneys of the Daytona bar who had been appointed to defend the prisoner. There was also attached the affidavit of Mr. McCollum as to the excitement of the people and their indignation against the perpetrator of the crime on the day it was alleged to have been committed, and that such feeling continued "very strong against Nickels" after his arrest in Jacksonville to the day of trial. The affidavits of certain women were also attached to the effect that very soon after the commission of the alleged crime Mrs. Moore who had not entirely recovered from the attack sufficiently to put on fresh clothing and treat her wounds, said that she "was knocked unconscious and did not know whether she was raped or not." There was also another affidavit by the defendant pur-

porting to fully set forth all the circumstances of his rela-
tions with Mrs. Moore and the ''Hunchback,'' the smallest
details of the transaction upon his last meeting with Mrs.
Moore, the excitement of the people and their feeling
against him when the rumor had gotten abroad that Mrs.
Moore had been assaulted, his escape from the city with
the aid of the ''Hunchback,'' how his confession of the
crime was extorted from him by the officers in Jacksonville
who told him of the ''feeling among the people in DeLand''
being so strong against him; that these ''men dressed in
plain clothes'' told him that if he confessed to the charge
of rape ''that he could not be hung for it and that would
be the best way'' for him to get out of the trouble; that
B. J. Moore had said that he would ''shoot this defendant
off the witness stand if this defendant told anything
against his wife at the trial.'' This language referred to
Moore's wife as the defendant was not married. That he
was not given any assistance by his counsel, whom, by
inuendo the defendant charged with craven disloyalty.

The judge denied the motion. In that order there was
no error. The writ of error *coram nobis* which issues for
the correction of a judgment entered in ignorance of cer-
tain matters of fact which if they had been known to the
Court rendering the judgment it would not have been
entered, will not be allowed as of course, but only upon
its being made to appear with reasonable certainty that
there has been some error of fact. In some cases it has
been held that the discretion of the trial judge in refus-
ing the writ is not reviewable. See 2 R. C. L. pp. 305-310;
Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29; Tyler v.
Morris, 20 N. C. 487, 34 Am. Dec. 396 Note. The writ will
not reach facts actually determined in the original pro-
ceedings. See Howard v. State, 58 Ark. 229, 24 S. W.
Rep. 8; Holford v. Alexander, 12 Ala. 280; Asbell v. State,

62 Kan. 209, 61 Pac. Rep. 690.   Nor will it lie when a
proper remedy is afforded by appeal or ordinary writ of
error.   2 R. C. L. 306; Saunders v. State, *supra*.   Nor will
it lie for false testimony at the trial, nor newly discovered
evidence.   State *ex rel.* Davis v. Superior Court of Pierce
County, 15 Wash. 339, 46 Pac. Rep. 399; Asbell v. State,
*supra*.   See also 26 Standard Proc. '602.   The writ has
issued where an accused person who through fear of mob
violence is forced to plead guilty and who upon such plea
is sentenced to prison.   See Adler v. State, 35 Ark. 517, 37
Am. Rep. 48; Sanders v. State, *supra;* State v. Calhoun,
50 Kan. 523, 32 Pac. Rep. 38, 34 Am. St. Rep. 141, 18 L.
R. A. 838.

The fact emphasized by the defendant in his applica-
tion for the writ, is the fear he had of mob violence at the
trial which impelled him, to plead guilty.   The affidavits
attached to the motion recite other facts evidentiary as it
is supposed of the defendant's state of mind.   There were
his youth and inexperience; the representations by the
''Hunchback'' as to the excitement of the people and the
eagerness of the posse; the precautions taken by the sheriff
in removing the defendant from the Duval County jail to
DeLand for trial, pulling down the curtains in the car of
the railroad train as it passed through DeLand because the
sheriff did not want people upon the outside to see the
defendant who was taken to Sanford and then by automo-
bile back to DeLand during the night; the reported threat
of the husband of the assaulted woman that he would shoot
the defendant ''off the witness stand'' if he said anything
against Mrs. Moore; and the alleged disloyalty and coward-
ice of the two lawyers appointed to defend him.   So far
as the defendant's affidavit is of concern it is full in every
detail necessary to completeness.   He accused the woman
whom he is alleged to have outraged of disloyalty to her

husband, of unchastity and disgustful vulgarity and theft, to which was added the speech and manner of a low vulgarian and termagant, and then in explanation possibly of the bruises upon the woman's face, accused himself of unfeeling brutality by affirming that he struck the woman in the face with his fist when she applied an offensive epithet to him, and in the "fight" which followed she proved "about as good a man" as the defendant, but not quite so good, as he succeeded in getting a knife from her with which she had armed herself. He admitted obtaining money from the "Hunchback" with which to purchase for the latter "Moonshine liquor" and then proceeded to give it to the woman to "keep for him."

He accused the officers of the law with an abuse of their obligations and deceit in obtaining his confession; the citizens of DeLand with the spirit of mob violence, and the husband of the woman with murderous intentions toward him, and he accused his counsel of unfaithfulness and treachery.

Outside of this affidavit, however, there was not the slightest evidence of any such conditions except the affiant's own criminal and lawless character. The affidavits of the two attorneys who were appointed by the Court to defend the accused showed that they acted in accordance with a correct conception of their duties and obligation as lawyers. They instructed the defendant that the plea of not guilty was the proper one to interpose, but that was before they had an opportunity to confer with him. That when they did have a conference with him and asked whether he had made a confession of the crime to the officers in Jacksonville and he replied in the affirmative, they told him frankly that "they did not know of any defense that they could make for him." And when he expressed a desire to plead guilty they told him that the

judge would take testimony to ascertain the degree of his guilt and impose the sentence of death or life imprisonment; but that if the defendant pleaded not guilty and the jury should find him guilty and recommend him to mercy the sentence would be life imprisonment, while if the jury should not recommend him to mercy the court would be bound by the law to sentence the accused to death. That when the accused asked them how he should plead, whether "guilty or not guilty," they declined to advise him, preferring to leave the determination of that question to him. They told the defendant that public sentiment in DeLand was strong against him, but they believed a jury could be obtained that would render a fair and impartial verdict. What duty toward their client did those two lawyers neglect? They stood ready to secure for the accused a fair trial so far as they were able to do so, but they did not propose to resort to any pretense or deception to secure an acquittal. They told their client as accurately as they knew what his situation was in view of his confession of the crime and the state of public feeling and the court's duty under the law and the effect of either plea, and left the matter to the defendant's sense of right, his conscience or his judgment as to expediency. This was all they were called upon to do in their capacity of lawyers having a high sense of their duties and obligations. The accused did not at that time inform his counsel that he intended to plead guilty through fear of mob violence; if he had, doubtless those two, evidently deserving, lawyers would have so informed the judge and prevented the injustice. The decision was evidently made by the defendant through a sense of his own guilt and a resolution to place himself and his cause at the discretion of the court as to the penalty to be imposed. If he was afraid of mob violence or the alleged threat of Mr. Moore to shoot him and that fear

was upon him when he pleaded, he did not so advise either his counsel or the court which it was his duty both to himself and the State to do. So far as the record shows outside of the petition and affidavit of the accused no such condition existed. That there may have been a strong feeling amounting to indignation in the community against the perpetrator of such a crime as that with which the accused was charged was most natural in a community of respectable and law-abiding citizens, but that such a community intended to take the law in its own hands and defile the temple of justice with such brutality as the accused now pretends to have feared is not a presumption that can be indulged to the end that the judgment rendered in the case may be nullified.

The affidavit of Mr. McCollum as to a "mob of at least fifty men" which had gathered and were hunting for the "one who had raped Mrs. Moore" related to the day upon which the alleged offense was committed, while the use of the word "mob" in the affidavit does not quite convey the idea of a "tumultuous lawless rabble" when it is applied to "at least fifty men" in a community the size of DeLand. The language of the affidavit is much more temperate when applied to the conditions at the trial about five months later at which time according to the affiant, there was in DeLand "strong feeling against the said Nickels." The affidavits of the women Mrs. McCollum, Mrs. Dreggors, Mrs. Downs and Mrs. Heyser, which were attached to the motion are merely inferentially in contradiction of a fact determined in the original proceedings and in so far as those ladies affirmed that Mrs. Moore said to them that she did not know whether she had been outraged as she was "knocked unconscious," such statement is consistent with the idea that Mrs. Moore declined to be

made by her own words to them the heroine of a repulsive scandal.

On the same day, November 20, 1922, the defendant by his counsel made an extraordinary motion for a new trial. That motion the Court overruled, and such order is assigned as the first error. The motion was made after more than six months had elapsed after the judgment in the case was entered. The motion contained no ground except the averment of newly discovered evidence which could not have been presented to the court in a motion for a new trial within the time prescribed by the statute. See Baxley v. State, 72 Fla. 228, 72 South. Rep. 677; Kirkland v. State, 70 Fla. 584, 70 South. Rep. 592; Koon v. State, 72 Fla. 148, 72 South. Rep. 673. Recitals in a motion for a new trial are not evidence of the facts stated. Counsel may embody in such motions what statements they please, but no court will regard such statements as evidence. See Broward v. State, 9 Fla. 422; Dukes v. State, 14 Fla. 499; McNealy v. State, 17 Fla. 198; Richardson v. State, 28 Fla. 349, 9 South. Rep. 704. Nor should the motion be granted upon the unsupported affidavit of the defendant when it rests upon the ground of newly discovered evidence. See Jones v. State, 35 Fla. 289, 17 South. Rep. 284.

All the necessary facts should be supported by affidavits. See Thompson v. State, 58 Fla. 106, 50 South. Rep. 507; Young v. State, 70 Fla. 211, 70 South. Rep. 19.

The contention that Section 2810, Revised General Statutes, 1920, Section 1608, General Statutes, 1906, does not apply because there was no jury trial in this case and therefore no verdict, is without merit. The purpose of the statute was to require the motion for a new trial to be · made during the term at which the trial was held. The common law rule required the motion to be made during the term, but even in the absence of any strict limitation

by statute an application must be made within a reasonable time under the circumstances of the particular case. See 20 R. C. L. 393; Dodge v. People, 4 Neb. 220; Hubbard v. State, 72 Neb. 62, 100 N. W. Rep. 153, 9 Ann. Cas. 1034 and Note; State v. Adams, 73 S. C. 435, 53 S. E. Rep. 538.

Some authorities hold that a motion for a new trial on newly discovered evidence made after judgment is addressed to the sound discretion of the Court.

In the Kirkland case, *supra*, this court held that the statute above referred to applied to criminal cases. There was no error in overruling the motion.

On the same day the defendant's counsel moved the Court to take oral testimony in support of the extraordinary motion for a new trial. The testimony which the defendant desired was that of Dr. J. E. Taylor, who it was averred was a practicing physician and treated Mrs. Moore on the day the crime was alleged to have been committed and examined her body and person at the time, and that he would testify that from such examination and "from what he learned from the said Irene Moore" it was his opinion that she "had not been raped" on December 8th, 1921, nor for more than twenty-four hours before. The motion recites that Dr. Taylor refused to make any such affidavit or give to the defendant or his attorney "anything in writing concerning the case." The defendant made an affidavit to the truthfulness of the statements contained in the motion, but it was unsupported by any other affidavit. The affidavit is defective in not stating how the defendant acquired the information that Dr. Taylor would so testify, but the motion upon the contrary shows upon its face that Dr. Taylor refused to make such an affidavit when he was requested to do so by defendant's counsel. Only by inference of a most uncertain and unwarrantable character can it be supposed that Dr. Taylor,

presumably a reputable physician, would withhold information which he alone possessed and callously see a man condemned to death for a crime which he had not committed. The only strength of the affidavit consists in this insinuation against the attending physician and that is not sufficient to convince the Court of an abuse of discretion even if in this jurisdiction it had the power to grant the extraordinary motion for a new trial. There was no error in denying that motion.

After these motions were made and overruled the defendant through his counsel sought to disqualify the presiding judge by an affidavit of the defendant that the judge "by reason of a fixed and settled opinion as to the guilt of this defendant has an interest in this cause and is disqualified to entertain any motions in said cause other than to have the same tried by a qualified tribunal." The defendant's counsel certified that the affidavit of the defendant was made in good faith, and two affidavits, one by L. H. Norman and H. P. Bane, were dated and filed November 21st, 1922, to the effect that Judge James W. Perkins was biased and prejudiced against the defendant and that such prejudice would influence him in any ruling or decision that he might make in the case.

The document called a "motion of disqualification of the judge" was dated the 17th day of November, 1922, the certificate of counsel was dated the 15th day of November, the affidavit of the defendant in support of the motion was dated the 17th day of November. The motion was filed on the 20th day of November and was heard by the judge on the 27th day of January, 1923, and the affidavits of the two citizens as stated were dated November 21st, 1922. Upon the same day the State Attorney filed the affidavit of H. P. Bane, and on the 24th day of the same month the affidavit of L. H. Norman, each affiant

deposing that he signed the first affidavit as to the judge's disqualification under a misunderstanding induced by representations of defendant's counsel as to the purpose of the affidavit and neither one of them understood that they were swearing to the judge's prejudice against the defendant which they did not believe to be the case, and which opinion they disaffirmed; but were under the impression that their affidavits so obtained would procure a new trial for the defendant. One of the affiants, L. H. Norman, stated that he was opposed to capital punishment, and from the representations made to him by the defendant's attorney affiant understood that the effect of his affidavit would secure a new trial for the defendant.

Such a showing does not effect the disqualification of a judge under our statute. The statute, Section 2674, Revised General Statutes, 1920, requires the affidavit, of the defendant to state the "facts and the reasons for the belief that any such bias or prejudice exists," and must be filed ten days before the beginning of the term of the court or good cause shown for failure to so file same within such time. And that the facts stated as a basis for making the affidavit shall be supported in substance by affidavit of at least two reputable citizens of the county not of kin to the defendant or counsel for the defendant. Neither the affidavit of Norman or Bane negatives the idea of kinship to the defendant or his counsel, and neither affidavit purports to affirm any facts given as a basis for making the affidavit of prejudice. Nor does the affidavit of the defendant state the "facts and reasons for his belief that any such bias or prejudice existed." The affidavit consists of mere repetitions of the assertion that the judge was "prejudiced" or "biased" and had "formed and expressed a fixed and settled opinion as to the guilt of this defendant." That the judge had "discussed freely the

question of the guilt of this defendant with other persons and had formed and expressed a fixed and decided opinion as to the guilt of this defendant.'' If having an opinion as to the guilt or innocence of an accused person on trial would disqualify a judge, no judge could well try the same case twice. Such was not the purpose of the statute. It is in derogation of the common law and was designed to secure for accused persons and litigants in civil cases trials by judges against whom the charge could not be reasonably made that by reason of some fact germain to the proceedings or relating to the transaction the judge's sympathy, bias or prejudice was unduly created against the movant. It was not intended by the statute to put it within the power of a person accused of crime or a litigant who was disinclined to come to trial to defeat justice and procure delays by arbitrarily asserting his belief in the judge's unfairness without any supporting fact to sustain it. The affidavits were insufficient under the statute and failed of their purpose.

Aside from this the Court was without jurisdiction to grant the motions for the writ of *coram nobis* and new trial and had no power under the circumstances to sign and certify a bill of exceptions. It is also true that the order he made allowing the correction of a date in the indictment as it appeared in the bill of exceptions was of no material injury as the record proper contains a copy of the indictment and no error in it is apparent.

No error was shown to have been committed, so the judgment of the Court is hereby affirmed.

TAYLOR, C. J., AND WHITFIELD, WEST AND TERRELL, J. J., concur.

BROWNE, J., not participating.

On Application for Rehearing.

WHITFIELD, J.—The writ of error herein was taken to a final order made by the Circuit Judge denying a writ of error *coram nobis* in a criminal case wherein the defendant was sentenced to be hung. An affirmance was ordered on writ of error taken from this Court, and a petition for rehearing was denied. Another petition for rehearing has been presented during the same term; and, in view of the death sentence, or the magnitude of the principles involved and of the somewhat undefined scope of the seldom used and little known common · law writ of error *coram nobis,* the Court has again considered the transcript of the record brought here on the writ of error taken to this Court to ascertain if anything contained in such transcript has been overlooked or not fully appreciated that would make the use of a writ of error *coram nobis* proper. Only the transcript of the record of the proceedings before the Circuit Judge in the application for the writ of error *coram nobis* may be considered by this Court.

It appears that the plaintiff in error was indicted in the Circuit Court for rape, and on arraignment pleaded not guilty. Afterwards he was re-arraigned and pleaded guilty. Before accepting the plea of guilty, the following proceedings were had in the court:

"Mr. DeCottes, the State Attorney (addressing the Court): It has been intimated to the State Attorney that possibly this defendant might desire to change his plea. He has heretofore been arraigned, and he pleaded not guilty, and the State is now ready for trial.

"The Court (addressing Mr. Green, of counsel for the defendant): Do you wish the defendant to be re-arraigned?

"Mr. Green: Yes, sir.

8—Vol. 86.

"Mr. DeCottes: In view of the fact that the defendant has been heretofore arraigned and pleaded not guilty, and, as I understand through counsel, desires to change his plea to that of guilty, I would request that the Court fully advise the defendant of the consequences of the plea of guilty to a crime of this nature—prior to the acceptance of the changed plea, if it is desired to change it from not guilty to guilty.

"The Court (to the defendant): Do you wish to withdraw your plea of not guilty, heretofore entered?

"The Defendant: Yes, sir.

"The Court: Do you understand what it means, if you are re-arraigned and you plead, guilty—do you?

"The Defendant: Yes, sir.

"Q. Do you understand the consequences of it? A. Yes, sir.

"The Court: All right.

"The Court: Q. Has any inducement been held out to you to get you to enter a plea of guilty? A. No, sir.

"Q. Has any person or persons requested you to do so, on the ground that it would be better for you, or anything of that kind?

"A. No, sir.

"Q. Has it been represented to you that if a plea of guilty were entered, it would be lighter on you? A. No, sir.

"Q. Do you understand that if you plead guilty, the punishment is death? A. Yes, sir.

"Q. You do? A. Yes, sir.

"Q. Have you consulted with your counsel? A. Yes, sir.

"Q. The attorneys that the Court appointed to represent you? A. Yes, sir.

"Q. You have consulted them thoroughly and fully as to the consequences of your act, and they have advised you—and, after that consultation, do you know what it means, and do you now wish to be re-arraigned and enter your plea of guilty? A. Yes, sir.

"The Court: Let the defendant then be re-arraigned.

"By Mr. DeCottes: Q. Do you answer to the name of Aubrey Lee Nickels—that is your name? A. Yes, sir.

"Mr. DeCottes: Listen to the reading of this indictment.

(Indictment read.)

"Mr. DeCottes: Q. You, Aubrey Lee Nickels, having withdrawn your plea of not guilty to this indictment, and having had the indictment again read to you, how do you now plead—guilty or not guilty? A. Guilty.

"Q. You plead guilty to the indictment, as I have just read it to you? A. Yes, sir."

No question was presented as to whether the plea of guilty was tendered because of fear or duress. Under the statute the penalty for rape is "death or imprisonment in the State prison for life." Sec. 5051, Revised General Statutes, 1920. The Court took testimony as to the circumstances of the alleged crime, and imposed the death sentence. Later, an application for a writ of error *coram nobis* was made in which the defendant by affidavit deposed that he "entered his plea of guilty because he was afraid of being killed," supporting facts being set out in the affidavit of the defendant.

The functions of a writ of error *coram nobis* are limited to an error of fact for which the statute provides no other remedy, which fact did not appear of record or was unknown to the Court when judgment was pronounced, and which, if known, would have prevented the judgment, and which was unknown and could not have been known to the

party by the exercise of reasonable diligence in time to have been otherwise presented to the Court, unless he was prevented from so presenting them by duress, fear, or other sufficient cause. Alexander v. State, 20 Wyo. 241, 123 Pac. Rep. 68, Ann. Cas. 1915A, p. 1282.

The writ cannot reach error in matters of law. A plea in abatement setting up the death of one of the parties, or that he is a slave or a lunatic, if overruled, estops the party who presented it, from again urging those matters in the same court; for in this case it is evident that the Court misapprehended the law but understood the facts. If, however, the proceedings are based upon facts presumed by the Court to exist, as when one of the parties is insane, or is an infant or a *feme covert,* or has died before the verdict, and the Court, supposing such party to be alive, and competent to appear as a litigant, renders judgment, it may be set aside by a writ of *coram nobis.* But this writ does not lie to correct any error in the judgment of the Court, nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end of litigation. Accordingly, where the judgment states that defendant appeared and confessed, he was not allowed to controvert that statement, after the lapse of the term, for the purpose of vacating the judgment.

The writ of error *coram nobis* is not intended to authorize any court to revise and review its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which, without any fault or negligence of the party, was not presented to the court. 1 Freeman on Judgments, Sec. 94; 23 Cyc. 884.

Where the accused in a criminal prosecution is forced,

through well-grounded fear of mob violence, to plead guilty to the criminal charge, he has a right to relief from such sentence and plea by an action or proceeding in the same court in the nature of a writ of error *coram nobis*. State v. Calhoun, 50 Kan. 523, 32 Pac. Rep. 38, 18 L. R. A. 838.

A writ *coram nobis* will lie when it is necessary for the accused to bring some new fact before the court which cannot be presented in any of the methods provided by statute, but it will not lie in cases covered by statutory provisions. A plea of guilty, forced from an accused by a well-grounded fear of mob violence, will not sustain a judgment of conviction when properly attacked. A sentence pronounced on a plea of guilty, forced from an accused by a well-grounded apprehension of mob violence, may be set aside in a proceeding in the nature of a writ *coram nobis*. A defendant who enters a plea of guilty upon a necessity produced by well-grounded fear and imminent danger of mob violence, may avoid the plea by a proceeding in the nature of a writ *coram nobis*. Sanders v. State, 85 Ind. 318; Trattner v. State, 185 Ind. 188, 113 N. E. Rep. 243. The writ may issue after the trial term has expired. Adler v. State, 35 Ark. 517, 16 C. J. 1327.

For other principles affecting the use of the common law writ of error *coram nobis,* see Fugate v. State, 85 Miss. 94, 37 South. Rep. 554, 3 Ann. Cas. 326; Wheeler v. State, 158 Ind. 687, 63 N. E. Rep. 975; Holt v. State, 78 Miss. 631, 29 South Rep. 527; Dobbs v. State, 63 Kan. 321, 65 Pac. Rep. 658; Hamlin v. State, 67 Kan. 724, 74 Pac. Rep. 242; Collins v. State, 66 Kan. 201, 71 Pac. Rep. 251, 97 Am. St. Rep. 361; Collins v. Mitchell, 5 Fla. 364; Hawie v. State, 121 Miss. 197, 83 South. Rep. 158, 10 A. L. R. 205; 2 R. C. L. 307; 3 C. J. 201, note b; 16 C. J. 1326; Bigham v. Brewer, 4 Sneed (Tenn.) 432; Cross v.

Gould, 131 Mo. App. 585, 110 S. W. Rep. 672; Fellows v. Griffin, 17 Miss. 362; State v. Asbell, 62 Kan. 209, 61 Pac. Rep. 690; Howard v. State, 58 Ark. 229, 24 S. W. Rep. 8; State v. Armstrong, 41 Wash. 601, 84 Pac. Rep. 584; Wilson v. State, 46 Wash. 416, 90 Pac. Rep. 257; Bennett v. State, 106 Miss. 103, 63 South. Rep. 339; Ex Parte Gray, 77 Mo. 160; Linton v. State, 72 Ark. 532, 81 S. W. Rep. 608.

A plea of guilty should be entirely voluntary by one competent to know its consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence , or ignorance. Pope v. State, 56 Fla. 81, 47 South. Rep. 487.

The plea of guilty to a serious criminal charge should be freely and voluntarily made and entered by the accused, without a semblance of coercion, and without fear or duress of any kind. Clay v. State, 82 Fla. 83, 89 South. Rep. 353.

A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance. Accordingly, it will not bind the defendant where it is entered through intimidation, however slight; and a judgment is not properly entered on it where the court does not satisfy itself of the voluntary character of the plea. It has sometimes been held that it must be made a matter of record that the plea was voluntary and uninfluenced by fear. 8 R. C. L. 115; Note 34 L. R. A. (N. S.) 259.

The greater portion of the record and most of the contentions made relate to matters not proper to be considered on a writ of error coram nobis; but there are in the transcript of the record statements contained in affidavits made by others than the defendant and substantial evidences of

other circumstances that may fairly tend to corroborate the affidavit of the defendant, that he pleaded guilty ''because he was afraid of being killed,'' which corroborating statements and circumstances were not particularly referred to by counsel, and which, perhaps, were not fully weighed and considered by the court; and, as a proper function of a writ of error *coram nobis* is to give appropriate relief when a plea of guilty has been tendered under a well grounded fear of bodily harm, the court has concluded that under the extraordinary circumstances of this case, a rehearing should be granted to again consider the question whether the transcript of the record brought here on writ of error duly shows that the plaintiff in error pleaded guilty under such fear or duress as to render the plea a nullity, and the subsequent proceedings on the indictment invalid.

The question of the guilt or innocence of the plaintiff in error of the charge contained in the indictment, cannot be considered on this writ of error taken to the final order of the Circuit Judge denying a writ of error *coram nobis* to the plaintiff in error.

It is considered, ordered and adjudged that the mandate in this cause be recalled from the trial court; that the cause be re-instated on the docket of this court, and that a rehearing be granted upon the question stated. It is so ordered.

TAYLOR, C. J., AND ELLIS, BROWNE, WEST AND TERRELL, J. J., concur.

## On Rehearing.

PER CURIAM.—A rehearing was granted herein to consider the question whether the transcript of the record

brought here on writ of error duly shows that the plaintiff in error, at the time of his sentence to capital punishment, pleaded guilty under such fear or duress as to render the plea a nullity, and the subsequent proceedings on the indictment invalid. It was again held that a plea of guilty should be entirely voluntary by one competent to know its consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence or ignorance and should be entered without a semblance of coercion and without fear or duress of any kind.

It appears that after the alleged offense of rape was committed, there was considerable feeling in the community against the perpetrator whoever he was, and that the defendant below was advised and assisted by a friend to leave the vicinity; that he left by night and was arrested several days afterwards in Jacksonville, Florida, where he was confined in jail until his trial was to take place in the county where the alleged crime was committed; that in taking the prisoner to the county for trial the sheriff told him there was much feeling against him in the county, and the prisoner was taken on the train past the town in which he was to be tried to another town beyond and at night was taken back to the jail in the proper county; that after the conviction on the plea of guilty the accused was taken back to the jail in Jacksonville for safe keeping. In his affidavits on application for a writ of *coram nobis* the defendant stated that he "entered his plea of guilty because he was afraid of being killed," and "that there was not anything said to the court about the threats that had been made against the life of this defendant and there was not anything said to the court during the trial of this defandant about the strong feeling among the people in DeLand against this defendant and these facts were not brought to the attention of the court and the court was

not advised of the same; that this defendant pleaded guilty in this case because he was afraid that he would be lynched by a mob or perhaps shot off of the witness stand by the husband of'' the prosecutrix who ''was present in the court room at the trial of this defendant.'' That ''while in the county jail in Jacksonville and just before his trial in DeLand, this defendant was told by two men from DeLand that the husband of the prosecutrix had said that he would shoot this defendant off the witness stand if this defendant told anything against his wife at the trial of this case;'' that his counsel ''would not tell this defendant how he should plead and that this defendant did not know what to say or to do; that this defendant was told that there was a mob of men in DeLand who had planned to lynch this defendant and this defendant believed the same to be true; that when this defendant went to trial in DeLand he did not know what to do or to say and he was afraid to have anything to say on account of the threats that had been made to take his life and that is the reason why this defendant pleaded guilty.''

One of the two counsel assigned by the Court to defend the accused by affidavit stated that after he was appointed to defend the accused and before he had an interview with the accused, the affiant and his associate counsel instructed the accused to plead guilty on arraignment; that after a conference with the accused, affiant told him that his counsel ''did not know of any defense they could make for him'' and ''that the defendant advised them he desired to plead guilty'' and ''that in the event that he plead guilty the judge would take testimony as to the charges against the defendant; that after hearing the testimony it would be in the discretion of the judge as to whether he would give him, the defendant, the death penalty or life imprisonment; that they further told the defendant that

if he pleaded not guilty and was tried by a jury, that the jury if they found him guilty, could recommend him to the mercy of the Court, in which event he would be sentenced to life imprisonment, while if the jury did not so recommend, the judge would have to sentence him to the death penalty; that the defendant then told this affiant and the said Alfred Green (his other counsel) that if he thought he would receive the death penalty that he would not plead guilty, but would go to trial; that the defendant then asked this affiant and the other counsel whether he should plead guilty or not guilty, and that this affiant and the said Alfred Green would not advise the defendant how to plead, but left it entirely with the defendant; that public sentiment and feeling among the people in DeLand and Volusia County was strong against the defendant, though this affiant and the other counsel were of the opinion a jury could be obtained in that county that would render a fair and impartial verdict in said case; that the defendant knew that public feeling and sentiment in Volusia county was strong against him; that in the afternoon of same day, May 1st, 1922, the defendant was re-arraigned and he plead guilty and the sentence of death was imposed upon him."

An affidavit by the other counsel is to the same effect.

Another affidavit made by a resident of the city where and when the alleged crime was committed states that "there was a mob of men hunting for the said Nichols and the feeling was very strong against the said Nichols; that the feeling in the town was strong against the said Nichols at the time of his trial; and that this affiant has no interest in this case."

In view of the above matters taken in connection with the entire record, it reasonably appears that the accused was misled into believing that only the death penalty could

legally be imposed on him after a verdict of guilty without recommendation to mercy by the jury; and that his surroundings were such that he reasonably may have believed and feared that his life was in imminent danger of fatal mob violence if he did not plead guilty; and that by pleading guilty he had a chance of a sentence to life imprisonment. This being his state of mind, the plea of guilty was not entered with a full appreciation of its consequences and was not voluntary and without fear, but was entered because of fear, misapprehension, ignorance or inadvertence, which would render the plea and the subsequent proceedings of the trial court null and void.

The order denying the motion for a writ of error *coram nobis* was, on the showing made, error requiring a reversal here.

Reversed and remanded.

TAYLOR, C. J., AND WHITFIELD, BROWNE, WEST AND TERRELL, J. J., concur.

ELLIS, J., dissents.

ELLIS, J.—Dissenting.

In a per curiam opinion the court has reversed its former decision of the affirmance of the judgment denying the writ of *coram nobis* and now holds the same to have been error and reverses the judgment.

I am unable to agree with the conclusion last reached, which is placed upon the statement that from the entire record in the case it reasonably appears that the accused was mislead into believing that ''only the death penalty could legally be imposed on him after a verdict of guilty

without recommendation to mercy by the jury; and that his surroundings were such that he reasonably may have believed and feared that his life was in imminent danger of fatal mob violence if he did not plead guilty; and that by pleading guilty he had a chance of a sentence to life imprisonment.''

In the first opinion, prepared by me, it is stated that writs of *coram nobis* had been ''issued where an accused person through fear of mob violence is forced to plead guilty and who, upon such plea, is sentenced to prison.''

The affidavit of the defendant in support of his motion was then reviewed and the conclusion reached that outside that affidavit the record disclosed no evidence of the existence of a state of facts such as he alleged; but, on the contrary, that the record disclosed rather that the defendant decided to withdraw his plea of not guilty which he had interposed and file the plea of guilty ''through a sense of his own guilt and a resolution to place himself and his cause at the discretion of the court as to the penalty to be imposed.'' And that if he was afraid of mob violence or the alleged threat of Mr. Moore to shoot him and that fear was upon him when he pleaded he did not so advise either his counsel or the court, which it was his duty, both to himself and the State, to do.

But it does not follow, that when a person charged with crime pleads guilty when under a fear of mob violence, that his plea is void. Nor is such the holding of the authorities. The element which vitiates the plea is that of constraint to plead guilty through fear of mob violence. If he pleads guilty in the secret belief that he stands a better chance for clemency by that plea than if he were to plead not guilty and risk a verdict of guilty by the jury without recommendation to mercy, the plea is not void; nor have I been able to find any authority which so holds.

In the Adler case, 35 Ark. 517, 37 Am. Rep. 48, the court held, as indicated by the first headnote, that a circuit judge has power to issue a writ of *coram nobis* to reverse a judgment of conviction when it appears that the defendant was insane at the time of the trial and the fact was not made known at the trial.

In the Calhoun case, 50 Kan. 523, 32 Pac. Rep. 38, 34 Am. St. Rep. 141, 18 L. R. A. 838, the court held that where the accused in a criminal prosecution is forced, through well grounded fears of mob violence, to plead guilty to the criminal charge and be sentenced to imprisonment he has a right to relief from such sentence. But in that case there was a mob in existence making threats against the accused when he put in the plea of guilty which was made by him before the mob had completely dispersed.

In the Pope case, 56 Fla. 81, 47 South. Rep. 487, this court said: In a criminal prosecution a defendant has a right to plead guilty, but it should be entirely voluntary by one competent to know the consequences and should not be induced by fear, misapprehension, persuasion, promises, inadvertence or ignorance. In that case the action of the lower court in refusing to allow the defendant, who had pleaded guilty, to withdraw his plea and interpose a plea of not guilty, was affirmed. The court said: "A defendant should be permitted to withdraw a plea of guilty given unadvisedly when *application* therefor is *duly made* in *good faith* and *sustained* by *proofs,* and *proper offer,* is made to go to trial on a plea of not guilty." See also Clay v. State, 82 Fla. 83, 89 South. Rep. 353.

I voted for a rehearing upon the extraordinary motion out of an abundance of caution to avoid the possibility of error in concluding that the record disclosed no evidence outside the defendant's own affidavit that he was constrained, by a well grounded fear of mob violence, to plead

guilty. A careful examination of the record confirms my first opinion as expressed in the affirmance of the judgment.

There is no evidence whatsoever in the record to show the existence of a mob in DeLand upon the date that the defendant interposed his plea of guilty. The offense was alleged to have been committed in December, 1921. He escaped from a posse which had been formed that day and was searching for him. His escape was aided by the man, Robinson, called the "Hunchback."

The defendant was arrested a few days afterwards in Jacksonville and shortly afterwards, in that city, made a confession of his crime. The confession appears to have been voluntarily made and is unimpeached except by his own affidavit in support of his motion for the writ of *coram nobis.*

He was indicted on April 12, 1922; and was arraigned and pleaded not guilty on May 1st following. Upon the afternoon of the same day he withdrew that plea and interposed the plea of "guilty" after he had been fully informed by the Court as to the legal consequences to him of such plea. Now what happened between the morning hour when he pleaded not guilty and that afternoon when in jail he decided to withdraw that plea and interpose the plea of guilty which intention he followed up later when he was brought into court soon afterwards? The record discloses nothing except a conference with his two attorneys, whose conduct, this court in the first opinion said; "was in accordance with a correct conception of their duties and obligations as lawyers."

When the defendant pleaded not guilty to the indictment that morning he was in full possession of all the facts, according to his own affidavit, which he alleges as a reason why the writ of *coram nobis* should have been issued and he allowed to withdraw his plea of guilty. He knew

when he interposed his plea of not guilty that morning that a posse, he called it a mob, had been formed to arrest him on the day the offense was committed several months before; that he had been taken by train from Jacksonville to Sanford and then brought back through the country by the sheriff of DeLand that night and that in passing through DeLand on the train the sheriff had drawn the curtains so that the people upon the ''outside'' could not see him; he had been told that the husband of the woman whom he is alleged to have assaulted had threatened to shoot him if, in his testimony, he should say anything derogatory to her character; he knew that the feeling in DeLand was strong against him; yet he in full possession of this knowledge, pleaded not guilty when he was arraigned.

The afternoon of the same day, before being brought back to the court house for trial on his plea of not guilty, while in jail in conference with his attorneys he expressed the desire to plead guilty. When he so expressed himself his attorneys then told him that if he pleaded guilty the judge would take testimony to ascertain the degree of his guilt and impose the sentence of death or life imprisonment. The accused then asked his counsel how he should plead; whether ''guilty or not guilty.'' They declined to advise him but told him that public sentiment in DeLand was strong against him but they believed a jury could be obtained that would render a fair and impartial verdict.

There is nothing that I can perceive in the conduct or advice of the defendant's counsel that was in the slightest degree reprehensible or that indicated a disposition to shirk their duty or that tended to create fear in the mind of the accused that he would suffer violence at the hands of any mob or at the hands of the husband of the woman outraged if the defendant did not plead guilty. The record

is wholly without proof of the existence of a mob at the time of the trial; nor is there any evidence in the record that there was any unusual excitement among the people, nor manifestation of feeling against the accused.

There is no proof offered in aid of the motion for a writ of *coram nobis* outside of the defendant's own affidavit, made seven months after his sentence, which supports the theory that the plea of guilty could have been induced by a well grounded fear of mob violence. On the contrary the plea was entered with a full appreciation of its consequences. The trial court had thoroughly advised the defendant. Although the defendant knew all the facts which he alleges as a reasonable ground to apprehend danger from a mob and which he now claims constrained him to plead guilty, he entered a plea of not guilty when arraigned. He knew when he announced to his counsel that afternoon his intention to change his plea to a plea of guilty that the plea of not guilty had been attended by no such consequences as seven months later he alleged he was afraid would have happened had he not pleaded guilty. Other than the defendant's own affidavit there is nothing in the record amounting to evidence of the existence of any conditions which could have created a well grounded fear in the defendant's mind that he would suffer violence at the hands of a mob or any person if he failed to withdraw his plea of not guilty and interpose one of guilty.

So I am of the opinion that the judgment of the trial court was valid and should be affirmed.