J. C. PIKE, *Plaintiff in Error*, vs. THE STATE OF FLORIDA, *Defendant in Error*.

139 So. 196.

Division A.

Opinion filed November 18, 1931.

*T. C. Cork* and *E. W.* and *R. C. Davis,* for Plaintiff in
Error.;

*Cary D. Landis,* Attorney General and *Roy Campbell,*
Assistant, for the State.

ELLIS, J.—A writ of error was taken to a judgment
denying to the plaintiff in error a writ of error coram
nobis.

J. C. Pike was convicted of the murder of Levi Nathan
Allen in Lake County, Florida. The murder was alleged
to have occurred on the 6th day of July, 1929. The con-
viction occurred in January, 1930. A writ of error was
taken to the judgment which this Court affirmed. See
Pike v. State, 101 Fla. 163, 134 South. Rep. 54.

Pike's defense was an alibi, which this Court, as well
as the trial court, thought was not satisfactorily estab-
lished. He was indicted jointly with Hiram Wesley Pres-
cott. In one count Prescott was charged with being prin-
cipal in the second degree. In another count Pike was
charged as principal in the first degree and Prescott as
principal in the second degree. When Pike was put upon
trial he obtained a severance upon his affidavit that Pres-
cott had made statements incriminating Pike and had sub-
sequently denied the truthfulness of such statements but
that his statements nevertheless would be admitted against
Prescott and harmful to Pike although inadmissible
against him. The affidavit also averred that Prescott's
statements charge Pike with the commission of the crime.
The affidavit also averred that a man named Rogers (J.
Ruffen) would testify that he heard Pike and Prescott in
a conversation in which they formulated an explanation
of the wounds on the person of Prescott.

In April, 1931, Pike applied to this Court by petition for leave to apply to the trial judge, Honorable J. C. B. Koonce, for a writ of error coram nobis and the petition was granted. The judge denied the writ. To that judgment, as hereinbefore stated, the case is here on writ of error.

The contention was made that certain facts, "which would have afforded an effective and complete defense" to the charge against Pike were not discovered, ascertained or made known to the court, the defendant, or his counsel, because of duress and unlawful means actually exerted by the prosecution in the trial court to prevent such discovery in due season to be available as a defense and to prevent the rendering of the final judgment.

It was explained that Prescott alone testified to the guilt of Pike and without his testimony no conviction could have been obtained; that it was he who testified that he was present and saw Pike commit the murder; that J. Ruffen Rogers was a State witness and his name was on the back of the indictment as such witness, but he was taken into custody and detained in the common jail by the Sheriff of Lake County on the order of the State Attorney as a material witness for the State until after the trial of Pike, and that Rogers was never called as a witness in the trial, although the State Attorney knew that the witness Rogers would testify that Prescott told Rogers on the day after the killing that Prescott had become involved in a dispute with a woman in Lake County armed with a knife and who cut him and Prescott "had to use a hammer on her, and also on her companion (Allen) and requested that he (Rogers) help him (Prescott) to establish an alibi." It is inferred that the Allen referred to was Levi Nathan Allen, who was killed, and the woman, who was Mrs. Angie Gillis, was killed at the same time. That the "prosecution" did not inform the defendant or his counsel that Rogers would so testify but held him in

custody and instructed him not to inform Pike, his counsel or his family of the fact; that it was by reason of the suppression of such evidence by the prosecution that Pike was convicted.

It was contended that Rogers was unlawfully restrained of his liberty for two reasons: first, to prevent Rogers from coming into contact with the counsel or family of Pike or indulging in neighborhood talk that might come to the attention of Pike, his counsel or family; second, to use Rogers ''as an instrument to force and compel the said Prescott to testify that Pike committed the murders''; that Rogers was never used as a witness in the trial of either Pike or Prescott. It is also contended that the trial of Prescott for the murder was a ''sham or pretext for discharging'' him from custody to carry out the ''terms of an agreement, either express or implied, to liberate Prescott in the event of the conviction of Pike'':

It is thus apparent that the basis of the application to the court for a writ of error coram nobis was fraud or deception practiced by the State Attorney, the public prosecutor for the State, upon the court to obtain the conviction of Pike.

The questions of law involved in this case are not what the learned counsel for the petitioner, the plaintiff in error here, state them to be in their brief. In the case of Nickels v. State, 86 Fla. 208, 98 South. Rep. 497, this Court announced the doctrine that a writ of error coram nobis would issue for the correction of a judgment entered in ignorance of certain matters of fact which if they had been known to the court rendering the judgment it would not have been entered. It must be made to appear that there has been some error of such fact; that it will not reach facts actually determined in the original proceedings, nor will it lie where a proper remedy is afforded by appeal or ordinary writ of error, nor for false testi-

mony at the trial nor newly discovered evidence. See Lamb v. State, 91 Fla. 396, 107 South. Rep. 535.

If the basis of the application for the writ is the existence of a fact, it must be of such nature as would have prevented the judgment that was rendered, that by due diligence neither the defendant nor his counsel could have known or ascertained, and that they exercised all ordinary and reasonable care and diligence to discover it or that the fact existing before the judgment was not discovered or made known to the court "because of actual, dominating fraud, duress or other unlawful means actually exerted by some one not in privity with the petitioner or counsel, to prevent such discovery or ascertainment or disclosure to the court in due season to be available as an efficient defense or to prevent the rendering of the final judgment rendered." See cases cited in Lamb v. State, *supra*.

The test of the writ is the lack of knowledge of facts inhering in the judgment itself. 26 Stand. Ency. of Proc. 602.

The writ will not issue, as stated by counsel in their brief in the "statement of questions involved", because the State Attorney did not introduce a witness who would have testified that another State witness, who did testify, had confessed the murder to the witness withheld; nor that the State Attorney with knowledge that a person "knows matters of vital importance to the defendant" retains such person in custody as a State witness and withholds from the defendant or his counsel such knowledge nor because the State Attorney calls as a witness for the State one who is "under an agreement to be exonerated in the event of the conviction of the defendant" petitioner, without so informing the jury, nor because the court may have erred in not permitting the defendant to impeach his own witness.

The question presented by the record, the affirmative or

negative answer to which would determine whether the judgment of the court in denying the writ should be affirmed or reversed, is: was the conduct of the State Attorney in the prosecution of the cause characterized by such dominating fraud upon the court in the suppression of evidence as to affect the judgment of the court and impair the inherent qualities of accuracy and fairness.

There is nothing in the record from which it can be clearly or even remotely inferred that the State Attorney practiced any deception upon the accused or that he misled him or his counsel. While we agree with counsel that the State Attorney would have attained to an ideal standard of official conduct as the State's representative if he had put defendant's counsel or the defendant in possession of all he knew about his witnesses and what under crossexamination they might have said, we do not discover in the record that he resorted to fraud or deception to suppress evidence which if it had been submitted would have prevented the entry of the judgment.

It is not wholly clear that the defendant and his counsel did not have knowledge that the witness Rogers would testify to facts favorable to the defendant because in the affidavit in support of the motion for a severance the name of Rogers was mentioned as one claiming to have heard Prescott and the defendant conspiring to account for the wounds on the person of Prescott. The defendant could have obtained a subpoena ad testificandum for Rogers and Prescott's alleged conversation with him may have been inquired into by cross-examination.

It does not follow that if the testimony of Rogers had been obtained, and would have been such as counsel assert, that it would have prevented the entry of the judgment.

In this view of the case the judgment should be and is hereby affirmed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL, J., concur in the opinion and judgment.

DAVIS, J., disqualified.