THOMAS, Justice.
The appellant on 29 August 1956 filed a notice of appeal from an order and judgment of the Court of Record of Escambia County, Florida, denying his petition for writ of error coram nobis and denying his motion for a new trial of the issues presented in that proceeding.
Before discussing and deciding the present controversy, it seems fitting to observe that this court retained jurisdiction of the cause by authority of Sec 26(6) of Art. V of the Constitution as amended 6 November 1956, F.S.A. The transcript was not brought here until nearly two years after notice of appeal was filed. The last brief came to this court 3 September 1958, and oral argument was heard by the court 5 November 1958.
The appellant had pleaded guilty of receiving and concealing stolen property, had been adjudged guilty 11 June 1956, and had been sentenced the following month to imprisonment of two years. At the time of sentence the appellant was asked if he had anything to say why it should not be pronounced and his counsel then moved that the appellant be allowed to withdraw his plea of guilty “[bjecause of an agreement with the County Solicitor.” The significance of the part of the record just quoted will appear later in our discussion.
A week after the imposition of sentence, the appellant presented to the trial judge a “petition for writ of error coram nobis and/or to vacate and set aside the plea of guilty and final judgment of conviction * * In this pleading he recited the history of the prosecution, the relevant details of which we have already stated, then charged that the plea of guilty was induced solely by the solicitor’s promise that if the appellant would acknowledge guilt, the solicitor would recommend to the judge that the appellant be placed on probation, or fined, as the only punishment for his infraction. The appellant further asserted that the solicitor had promised that if the recommendation should be rejected by the court, the appellant would be allowed to withdraw his plea, to enter one of not guilty, and to receive a trial. He claimed that the solicitor entered into the arrangement because the appellant had assisted the solicitor in bringing certain guilty parties to justice and because the solicitor thought the case against the appellant was unsubstantial anyhow.
According to the averments in the petition the appellant had not been told by his then attorney that the judge would not be bound by any arrangement between the appellant and the solicitor with reference to a plea of guilty, although it was developed in the testimony eventually taken that before the plea was ever entered the attorney knew of this attitude on the part of the judge.
It was alleged that the appellant’s dubiousness of the reaction of the judge to the recommendation of the solicitor prompted the statement we have quoted that was made by the appellant’s attorney at the time sentence was imposed.
The appellant asserted that he had a meritorious defense to the charge lodged against him.
The petition was supported by a lengthy affidavit of an inspector of the Railroad and Public Utilities Commission relating the conversation between the appellant and the solicitor in the presence of the affiant and two other persons, one of whom was the investigator attached to the sheriff’s office in Escambia County. The contents of this affidavit corroborate the pertinent averments of the petition and two of the statements deserve special attention, namely, that the investigator had said that if he had controlled the prosecution “a case would have never been made against” the *44 appellant because of the lack of evidence of guilt and the assistance appellant had rendered the State. We say this part should be stressed for the reason that the investigator for the sheriff’s office himself appended an affidavit that he had read af-fiant’s sworn statement; that the allegations in it were true; and that he personally heard the solicitor’s promise to the appellant.
At this point, and at the risk of introducing some confusion, but in the hope that light will be shed on the situation of the appellant, Fred Ard, we interject a reference to one Dusky Ard who was being prosecuted and who was a co-petitioner of Fred Ard, although the former is not immediately involved.
During the. introduction of testimony which the trial judge heard while considering the petition he made these remarks:
“The Court: I might state this with reference to Dusky Ard. This man did not have an attorney. He is a man of, and I don’t mean this in any discourtesy to him, but he is a man of low intelligence — you all know that —and I can readily see how he could be misled from what was told him down there in that jury room the morning he plead guilty. I can see bow a man of low intelligence, who was not represented by counsel at the time, might think that in spite of anything that the Judge said to him at the time he plead guilty he would still ¡have a right to withdraw his plea when the County Solicitor told him that he was going to recommend it. The only thing that I think in fairness to the Court the County Solicitor, if he is going to make those recommendations, ought to tell the Judge about it prior to the man’s pleading so that I can then say whether or not I will accept it. It kinda’ puts the Court in a peculiar position. I don’t know what is going on. So as to Dusky Ard, I am going to let him withdraw his plea, became, frankly, the man was unadvised, he had no lazvyer at the time, and I can understand how he might have been misled into believing that even though I told him that I was not going to be committed to any form of sentence, that if I didn’t put him on probation in view of what the County Solicitor had told him, I can readily understand how he might believe that he would be permitted to withdraw his plea and that it was a matter entirely in the command of the County Solicitor instead of the Court. I can understand how he might be misled by it, so for that reason I am going to let him withdraw it, but it is entirely a different matter as to the other defendant. [Fred Ard, appellant]” (Italics supplied.)
So, the pivotal fact that motivated the judge seem.s to have been the representation of one by an attorney, while the other had no counsel.
Further, referring to Fred Ard, the judge described a conversation among himself, the solicitor and the then attorney for the appellant during which he declared that he would not commit himself to any particular disposition of the case “but would order a pre-sentence investigation * * * by the Florida Parole Commission if the defendant did plead guilty * * * and impose such sentence as the ends of justice demanded after receipt of the report * * He stated that he told the solicitor and the attorney for the appellant he would not be committed to allowing the appellant to withdraw his plea of guilty and that if the petitioner plead guilty, he would do so at his own risk. This is the conversation, so the appellant alleged, that his attorney did not report to him.
The judge recited that the motion, made immediately preceding the sentencing, to withdraw his plea of guilty had been denied and the sentence for commission of a felony had then been imposed.
*45 As a result, Dusky Ard was given permission to withdraw his plea of guilty while the petition of Fred Ard “for writ of error coram nobis and/or to vacate and set aside the plea of guilty and final judgment of conviction” was denied. The judge fixed a supersedeas bond conditioned that the appellant would be “forthcoming to * * * abide the final orders, sentence or judgment that may be passed in the premises by the Supreme Court of Florida * *
The appeal so far as it relates to the order disposing of the combined effort to secure a writ of error coram no-bis and an order of the judge to set aside the plea of guilty poses a very difficult question. Clearly there is no provision in the law for an appeal from an order on a petition to vacate a plea of guilty although the action of the judge on such a petition may be reviewed in an appeal from the judgment based on the plea. La Barbera v. State, Fla., 63 So.2d 654. By elimination we reach the last phase of the case, that is, the order so far as it relates to disposition of the attempt to secure a writ of error coram nobis. Such a writ is based on an “alleged error of fact not appearing upon the record” so that the error which presumably would not have been committed had the fact been known, may be corrected. Chambers v. State, 117 Fla. 642, 158 So. 153. In this case the court distinguished between ordinary writs of error and writs of error coram nobis. The functions of the latter were defined as early as 1923 in Nickels v. State, 86 Fla. 208, 98 So. 497, 502, 504, 99 So. 121. It was written in that opinion that the writ’s operation was limited to an error of fact for which the statute afforded “no other remedy,” a fact that did “not appear of record, or was unknown to the court when judgment was pronounced, and which, if known, would have prevented the judgment, and which was unknown, and could not have been known to the party by the exercise of reasonable diligence in time to have been otherwise presented to the court, unless he was prevented from so presenting them by duress, fear, or other sufficient cause.” The state of the record already described by us when compared with this pronouncement demonstrates that there was no basis for such a writ in the present case as at all relevant times the salient facts were known to the court and to the attorney whom the appellant had chosen to represent him. We stress the character of the writ as one providing a remedy when no other is available by citing a decision of this court rendered 34 years later, in Russ v. State, Fla., 95 So.2d 594, 597: “[t]he showing must be such that if the matters shown had been before the trial court when judgment was entered, the court would have been precluded from entering the judgment. The party seeking the writ must have no other remedy.” (Italics supplied.)
Obviously the appellant had another remedy. He could have appealed as a matter of right, Secs. 924.05 and 924.06, Florida Statutes 1955, and F.S.A., from the judgment, which he has never done. The scope of review is defined in Sec. 924.32, Florida Statutes 1955, and F.S.A.
We cannot accept the argument that the appellant was relegated to the use of a writ of error coram nobis to secure a review of the actions of the trial court by which he was aggrieved. Moreover we do not believe that in an effort to secure a review of the order disposing of the proceedings in coram nobis, the appellant can expect the court to extend its decision to actions of the trial court which would have been reviewable on an appeal from the judgment.
Although the circumstances under which the appellant pleaded guilty, and under which he was denied the privilege of retracting that plea and standing trial would appeal to us if properly presented, Pope v. State, 56 Fla. 81, 47 So. 487; Brown v. State, 92 Fla. 592, 109 So. 627, we decline in the present procedure to pass upon the question whether or not there *46 was any abuse of the trial court’s discretion. We conclude that were we to undertake to decide the merits of the facts, the procedure and the ruling- in which they culminated, we would likely distort the controlling statutory law and case law that have developed during the years. This we are specifically prevented from doing by Sec. 20 of the Canons of Judicial Ethics promulgated by this court 27 January 1941, 31 F.S.A.
Affirmed.
TERRELL, C. J., and HOBSON, ROBERTS and DREW, JJ., concur.