FREDERICK G. DEITERLE, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

Division B.

Opinion filed October 22, 1929.

*Edward F. P. Brigham,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

Buford, J.—In this case the plaintiff in error was arrested, being suspected of the unlawful killing of Ollie Glass, a woman with whom he had been living and holding out as his wife, although she was not, for several months prior to her death.

The body of an unknown and unidentified woman was found on the shores of Biscayne Bay, in or near Miami. From the evidence legally introduced it may be fairly assumed that this body was that of Ollie Glass, although it was so decomposed as to make positive identification impossible.

The plaintiff in error here, defendant in the court below, was arrested some time after the body was found. He was arrested in the night time in the room which he and Ollie Glass had formerly occupied. He was taken to the county stockade and, after being questioned by the officer who arrested him and maintaining that Ollie Glass had committed suicide, he was placed in a cell without a bed and he claims was chained to the floor. Other witnesses are evasive as to this fact, but it is undisputed that he remained in that cell all night; that the cell was infested with mosquitoes to such an extent that he could not sleep but had to take off his shirt and fight mosquitoes throughout the night. The next morning he was given two biscuits, which he could not eat, and a cup of coffee and, without being allowed to make any toilet, or wash his face and hands, he was taken into the State attorney's office.

Here the record shows he was advised of his legal rights and having been so advised, was put through a grueling examination by the State attorney, the assistant State attorney, the chief of police of the city of Miami and the deputy sheriff who made the arrest. The scalp of the dead woman was placed at his feet and the bath robe which covered her body when it was found was brought before him. The rec-

ord shows that a stenographer was called in to take down in shorthand all that was said. For some reason it appears that the notes were never transcribed and there was no effort to introduce a stenographic report of what was said and done on that occasion. The record shows that the accused maintained that Ollie Glass had committed suicide or had died from the effect of drugs, which she had been in the habit of taking, for a period of probably one hour after being brought to the State attorney's office and after being advised of his legal rights. The record further shows that during the early part of this examination both the State attorney and the officer who arrested the accused told him that he had better tell the truth. There is some evidence in the record that it was represented to the accused that he had better make good with the State attorney by telling the truth and that the State attorney was his friend. This latter statement is not clearly shown to have been made but it is clearly shown that after accused was warned of his rights that every effort, except physical violence and direct promise of reward, or threats of physical violence, was used to overcome the will of the accused and to induce or cause him to change the statement which he had made and to make some sort of admission that he was responsible for the death of Ollie Glass. The examination continued from about 9:30 o'clock in the morning, as is shown by the record, until 1 o'clock in the afternoon and the testimony of the arresting officer was that at that time, when they adjourned for lunch, they had not gotten all they wanted out of the accused. They brought him back immediately after lunch, questioned him some more, took him to the scene of the homicide, if it was a homicide, carried him out to the place on the beach where the body was found, then brought him back to the State attorney's office and there at 4 o'clock in the afternoon, according to the record, a stenographic report

of a statement which he then made was taken and transcribed and signed by him. If the statements alleged to have been made by the defendant during the course of the examination by the officers prior to the time that he was taken out to the room where Ollie Glass died were *freely* and *voluntarily* made, then we labor under a misapprehension as to the meaning of the words.

In the case of Nickels v. State, 90 Fla. 659, 106 So. R. 479, this Court, speaking through Mr. Justice STRUM, referring to an extra-judicial confession, say:

"Such a confession is admissible in evidence when it is freely and voluntarily made by the accused and is uninfluenced by any threat, promise, fear, hope, or other illegal inducement, even though the accused be under arrest and in prison at the time such confession be made to the officer having the accused in custody. Green v. State, 40 Fla. 191, 23 So. R. 851; McNish v. State, 47 Fla. 69, 36 So. R. 176; Sims v. State, 59 Fla. 38, 52 So. R. 198; Williams v. State, 48 Fla. 65, 37 So. R. 521; Moore v. State, 68 Fla. 91, 66 So. R. 431; McDonald v. State, 70 Fla. 250, 70 So. R. 24; Davis v. State, 105 So. R. 843, decided at this term. That the confession was in fact so made should appear *prima facie* before it is admitted in evidence. Statements made by the accused as a part of the confession with reference to its voluntary character, while pertinent, are by no means decisive of the matter. The question is to be determined solely by the trial judge, in the absence of the jury, as a mixed question of law and fact, from a preliminary consideration of the evidence offered by either party bearing upon the circumstances, conditions and surroundings under which the confession was made, which may include evidence of the age, sex, disposition, experience, character, education, intel-

ligence, previous training, and mental condition of the accused, bearing in mind that all confessions of the accused should be acted upon by both court and jury with great caution. Coffee v. State, 25 Fla. 501, 6 So. R. 493, 23 Am. St. R. 525. When admitted, the credibility of the confession is for the jury to determine. Holland v. State, 39 Fla. 178, 22 So. R. 298; Bates v. State, 78 Fla. 672, 84 So. R. 373. When it is made to appear *prima facie* by the State that the confession was made in conformity with the rule above stated, the burden is then upon the defendant to show that it was in fact not a voluntary confession. Sims v. State, 59 Fla. 38, 52 So. R. 198. In considering whether the confession is voluntary, the trial judge must, of course, determine the facts even upon conflicting evidence, and when we are called upon to review his ruling upon such evidence, we must accord to his finding the presumption that it is correct. While the circumstances which constitute improper influences, such as will exclude confessions, create questions of law which may be reviewed by an appellate court, the credibility of the testimony to prove the circumstances, as well as the credibility of conflicting testimony, are primarily questions for the trial court, not reviewable by us, unless the court below has clearly erred in its conclusion of facts, or, as expressed by this Court in Coffee v. State, 25 Fla. 501, text 514, 6 So. R. 493, 23 Am. St. R. 525, unless the court below 'has transcended its discretion and a wrong may have been done thereby.' Holland v. State, 39 Fla. 178, 22 So. R. 298; Thomas v. State, 58 Fla. 122, 51 So. R. 410; Davis v. State, 105 So. R. 843, decided at this term.

''The law is well settled that when an extra-judicial confession is made in conformity with the rule above

stated, it is admissible, though it may not be the spontaneous utterance of the accused. The fact that the confession was obtained by questioning the prisoner will not alone exclude it, even though some of the questions be leading and assume guilt, if the confession in fact emanates from the free will of the accused and is without inducement of hope, fear or other illegal influence. Davis v. State, 105 So. R. 843, decided at this term. See also, Ziang Sung Wan v. United States, 266 U. S. 1, 45 S. Ct. 1, 69 L. Ed. 131, decided October 13, 1924; Underhill's Crim. Ev. (3rd ed.), Sec. 352; Curry v. State, 203 Ala. 239, 82 So. R. 489; State v. Penney, 113 Iowa 691, 84 N. W. R. 509; Young v. State, 90 Md. 579, 45 A. 531; State v. Priest, 117 Me. 223, 103 A. 359; State v. Barrington, 198 Mo. 23, 95 So. W. R. 235. A mild degree of persistency in such questioning is sometimes sanctioned. People v. Siemson, 153 Cal. 387, 95 Pac. R. 863; State v. Banusik, 84 N. J. Law 640, 64 A. 994. When considering such a confession, however, trial courts should exercise great diligence to ascertain whether such questioning was so repeated and persistent and applied under such attending circumstances of intimidation or of inequality between the interrogator and the accused as to impair the freedom of will of the latter and thereby amount to compulsion. The effect as well as the form of the compulsion should be carefully weighed and considered, for a confession obtained by compulsion must be excluded, whatever may have been the character of the compulsion. Ziang Sung Wan v. United States, 266 U. S. 1, 45 S. Ct. 1, 69 L. Ed. 131, decided October 13, 1924. But there is a clearly existing distinction between the repeated and persistent questioning which may render the resulting confession inadmissible, and a series 'of questions,

calmly and fairly propounded and readily answered. The former is a persistent repetition of questions directed to substantially the same matter, which, especially when addressed by a strong and vigorous man to a weaker one in adverse circumstances, may impair the mental freedom of the latter so as to constitute compulsion. The latter merely elicits the connected recital of a sequence of events.''

And in the case of Roe v. State, 123 So. R. 523, this Court reaffirmed the utterances contained in the Nickels case. Under the rule as approved by this Court the oral evidence of the alleged confessions should have been excluded.

The written statement which was signed by the accused at 4 o'clock P. M. on the 23rd day of July, 1928, was offered by the State and was admitted over the objection of the defendant. We can see no good purpose that would be served by setting out this statement in this opinion. It consists of questions and answers, the questions being propounded to the accused by the State attorney and the answers being made by the accused. It does not contain a confession of guilt of any unlawful degree of homicide. It does not admit that the accused took the life of Ollie Glass. It was admissible, however, as constituting one of the conflicting statements made by the accused concerning the death of Ollie Glass. He had freely and voluntarily stated that Ollie Glass committed suicide. This statement which he signed on July 23rd is contradictory to his statement that Ollie Glass committed suicide. From this written and signed statement the conclusion might be reasonably reached that the accused was responsible for the death of Ollie Glass, but, at most, this statement and reasonable deductions to be gleaned and arrived at therefrom, would not support the verdict. The evidence is otherwise insufficient to sustain the verdict. See Ziang Sung Wan v. United

States, 266 U. S. 1, 69 L. Ed. 1. Therefore, the judgment should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND BROWN, J., concur in the opinion and judgment.

ELLIS, J., dissents.

ELLIS, J., dissenting:

Frederick G. Deiterle was convicted of murder in the second degree of Ollie Glass, a woman with whom he had been living in an illegal relation for several months in an apartment in Miami. The woman's body was found in a partially decomposed condition on Northeast Seventeenth street near the bay. There was some difficulty in the matter of identifying the body when it was found, but later its identity was sufficiently established.

The woman disappeared from the apartment on July 7, 1928, and was found on the 10th. On the 10th the defendant made a payment on the rent to his landlord and told him that his wife, Ollie Glass, was not feeling well, would be away for a few days, and that "she was at her sister's." On July 16th the defendant made another payment on the rent to his landlord and said that his wife "wasn't feeling very well" and that she "was living with her sister." On July 22nd the defendant was arrested on the charge of murdering the woman and the next day confessed.

I do not agree to the conclusion reached by the majority of the members of the Court that the confession should have been excluded from the evidence. Nor do I read from the record that the harsh methods recited in the opinion were

used to extort the confession from the accused. He was subjected to inconveniences to which he was probably not accustomed, such as being confined in a padded cell and handcuffed and ankle irons placed upon him. He remained alone all night in the cell and next morning was given a breakfast, so he states, which consisted of a cup of coffee and two biscuits which were so hard that he could not eat them.

I find, however, nothing in the record to show that the confession he made was extorted from him by force or intimidation or promise of reward. He was advised of his rights and his confession was voluntary. It is said in the opinion that every effort was used except physical violence to overcome the will of the accused and induce him to make a confession. I do not agree to that statement, although it may be consistent with a perfectly legitimate examination of one charged with the commission of crime to obtain from him information as to his connection with it. Besides, all that is said to have happened concerning the alleged maltreatment of the accused is found only in his own statement.

In view of all the evidence, which consisted of nearly six hundred typewritten pages of matter, about 75 per cent of which is unnecessary, irrelevant and useless, I think the verdict was amply supported, and the trial court did not err in declining to order a new trial.

I think the judgment should be affirmed.