ISIAH (IZELL) CHAMBERS, JACK WILLIAMSON, CHARLIE DAVIS and WALTER WOODWARD (WOODARD) v. STATE.

158 So. 153.
Opinion Filed December 17, 1934.

S. D. McGill and Robert P. Crawford, for Plaintiffs in Error;

Cary D. Landis, Attorney General, and Roy Campbell, Assistant, for the State.

ELLIS, J.—The case is here on writ of error to an order made by the Circuit Court of Broward County denying a petition for a writ of error *coram nobis,* application having been made to this Court by petition of the plaintiffs in error for permission to apply to the trial court for such a writ and granted. See Chambers, *et al.,* v. State, 111 Fla. 707, 152 South. Rep. 437.

Robert Darsey was killed by certain persons in the town of Pompano in Broward County on Saturday night, May 13, 1933, about nine o'clock. He was attacked, beaten severely, robbed and left to die on the public highway. The object of the attack was robbery. Money was obtained from the victim of the murderous assault and he died from the effect of the wounds inflicted.

The persons named as plaintiffs in error in this proceeding were arrested with eight or ten others, all negroes, upon suspicion. After some investigation, judicial or extra-judicial, official or unofficial, does not appear, all were released except the persons named as plaintiffs in error in this proceeding.

Chambers was tried by jury on an indictment charging the four of them with the murder of Mr. Darsey and found guilty of murder in the first degree. The other three pleaded guilty. The evidence which the judge of the court heard in the Chambers case was by stipulation of counsel used by the court in determining under the statute the degree of guilt of Davis, Williamson and Woodward, the other

three negroes charged jointly with Chambers with the crime and who pleaded guilty. Sec. 7140 C. G. L.

A statement of the facts as they were disclosed in the case against Chambers appears in the reported case entitled Chambers, *et al.,* v. State, 111 Fla. 707, 151 South. Rep. 499.

The four accused persons were adjudged to be guilty of murder in the first degree and sentenced to suffer the penalty of death. See Chambers, *et al.,* v. State, *supra.*

The convicted persons then lodged in this Court a petition to permit them to apply to the Circuit Court for a writ of error *coram nobis.* The Court held that the petition contained allegations of such nature that warranted this Court in granting the petitioner leave to apply to the Circuit Court for the writ. See Chambers, *et al.,* v. State, 152 South. Rep. 437, 111 Fla. 707.

It was held that if the allegations were true they constituted sufficient ground for granting the writ; that the determination of such questions to be presented in the application to the trial court may be had in that court "under issues duly made for that purpose."

The purpose of the writ is to enable a party against whom a judgment has been taken to be relieved in the same court by showing error of fact. The fact assigned as error, the writ being allowed, should be tried by a jury. See Tyler v. Morris, 4 Devereux & Battle's Law (N. C.) 487, 34 Am. Dec. 395.

Some confusion exists as to the nature and purpose of the writ because it is so little used in ordinary practice and in many States has fallen into disuse altogether because of other remedies wholly sufficient prescribed by statute. In this State, however, the writ has in recent years been several times used. The principal difference between an ordinary writ of error and a writ of error *coram nobis* is that

the former is brought for a supposed error in law apparent on the record and takes the case to a higher tribunal where the question is to be decided and the judgment, sentence or decree is to be affirmed or reversed, while the latter, a writ of error *coram nobis,* is brought for an alleged error of fact not appearing upon the record and lies to the same court in which the judgment was entered in order that it may correct the error which it is presumed would not have been committed had the fact in the first instance been brought to its notice.

The error always assigned is not for any fault in the court, but for some defect in the process or default in the ministerial officers, or because of the existence of a fact of which if the court had been duly advised the judgment could not have been properly entered. Such an error of fact is not an error of the judge, therefore reversing the judgment by the judge pronouncing it is not a reversing of his own judgment, nor was it so considered at common law. It is as if the judgment sought to be reversed by the proceeding is wanting in a necessary element without which no valid judgment could be entered. Many conditions may exist which would render it impossible that a valid judgment could be entered as, for instance, where a judgment is entered against a person who had no notice of the institution of the suit; where a judgment is entered upon a plea which the defendant was coerced through fear of personal violence to make, or where through some fraud or deception practiced by a ministerial officer of the court a judgment is procured which would not have been entered had the judge been informed of the true state of facts.

The writ is not regarded as a writ of right and is not allowed as of course, but only upon its being made to appear with reasonable certainty that there has been some error of fact. The application is usually made on sworn petition

and on notice to the opposite party. Notice is necessary because the writ of error *coram nobis* is in the nature of a new suit to annul and revoke the former judgment. The former practice requires an assignment of errors in the nature of a declaration stating the errors of fact relied upon. The defendant in error may demur or plead to the assign‐ment. The common plea in error is *nulla est erratum,* which admits the truth of the error, but insists that in law it is not error. If it is desired to deny the truth of the error in fact assigned the defendant in error traverses it by plea and takes issue thereon which issue is tried by a jury, or he may plead specially any matter in confession and avoid‐ance. 2 Tidd's Practice, 1175; 3 Bac. Abr. title Error.

If the judgment is for the plaintiff in error it is that the former judgment be recalled, revoked and annulled; if for the defendant in error it is that it be affirmed.

In such an attack upon a judgment it is the proceedings only that are complained of as erroneous that are reversed. The plaintiff may after reversal continue the original action without being compelled to commence *de novo.* In the case at bar, for example, if the judgment should be reversed for the alleged error of fact set out in the petition the defend‐ants in the criminal case would be required to enter their pleas to the indictment and the cause would proceed upon the new pleas to final disposition of the case. For a full note on the subject see the case of Holford v. Alexander, 12 Ala. 280, as reported in 46 Am. Dec. 253, with note. Also 3 Chitty Blackstone's Com. P. 406; 2 R. C. L. 305.

The writ has not been abolished by statute in this State and is applicable in criminal as well as civil cases as this Court has in several cases recognized. Therefore when the writ is used the procedure at common law in connection with its use is not only appropriate but proper.

The practice has prevailed in this State that when a judgment in a criminal case has been affirmed by the Supreme Court and the convicted persons desire to attack the judgment because of the existence of a fact which had the Court known would have precluded the entry of the particular judgment, application must be made to the Supreme Court for leave to file a petition for the writ in the trial court because the judgment which has been affirmed by the Supreme Court becomes the judgment of that court and no other State court can examine its proceedings and annul its judgment, therefore it has been expressly held that the Supreme Court in such case has power to review its own judgment rendered on appeal through a writ of error *coram nobis*. See Dows v. Harper, 6 Ohio 518, 27 Am. Dec. 270.

The rule may be subject to some modification as affected by the loss of jurisdiction by expiration of the term, about which, however, no opinion is expressed. It is therefore proper and entirely consistent with principle that this Court after affirming a judgment of conviction should require a convicted person desiring a writ of error *coram nobis* to submit his petition to this Court wherein he shall set forth the facts which were not brought to the attention of the trial court and which he asserts would have precluded the entry of the particular judgment had they been known or had been brought to the court's attention. In such case this Court then determines the legal effect of such alleged facts as affecting the judgment and if it deems them sufficient in legal effect if established it grants permission to the applicant to apply to the trial court for the writ of error *coram nobis*. That course was followed in this case. Chambers, *et al.*, v. State, *supra*.

When the Supreme Court has made its order upon a petition duly presented allowing the petitioner to apply to the trial court for a writ of error *coram nobis*, it is equivalent

to an order or mandate that the lower court allow the writ to the end that the question of fact may be enquired into and if it be found that it is true then the judgment entered should be annulled and the proceedings in the cause be taken up again at the point where the error in fact occurred. Thus this Court said, speaking through Mr. Justice BUFORD in the Chambers case, *supra:* "The determination of such question may be had in the Circuit Court under issues duly made for that purpose." (152 South. Rep. 437.)

As stated above, some confusion has existed as to the nature and purpose of the writ because it is so little used in the ordinary practice, so it may be said that probably some confusion as to the effect of an order by this Court allowing an application to the trial court for such a writ has also occurred, due not only to the infrequency of such proceedings, but to words and phrases used which were not chosen with sufficient accuracy in the written opinions to convey the exact idea concerning the effect of such an order by this Court.

In the case of Jennings v. Pope, 101 Fla. 1476, 136 South. Rep. 471, the writer said that the permission when granted by the Supreme Court is "merely an authority to the trial court to consider an application for a writ of error *coram nobis* and to grant it if in the judgment of the trial court a sufficient showing is made for granting it." It was also stated that "The contention that, because this Court granted permission to the defendant below while the cause was pending here on writ of error to apply to the trial court for a writ of error *coram nobis,* the trial court was precluded from denying the writ because the Supreme Court had virtually determined the sufficiency of the grounds as set out in the petition, cannot be sustained." The cases of Lamb v. State, 91 Fla. 396, 107 South. Rep. 535, and Washington

v. State, 92 Fla. 740, 110 South. Rep. 259, were cited to support the text.

That is by no means accurate language. The permission by this Court to apply to the trial court for a writ of error *coram nobis* is authority to that court to consider the question presented by the application upon its merits, not however for the purpose of granting or denying the writ, but for the purpose of deciding whether the judgment as entered should be annulled or affirmed.

In that case this Court, on writ of error to the order denying the issuing of the writ, proceeded to consider the application upon its merits and pointed out that although permission had been granted to apply for the writ the facts relied upon were in themselves insufficient to warrant an annulment of the judgment. In other words, the act of the court in disallowing the writ was harmless error, as the facts alleged being admitted were insufficient to justify an annulment of the judgment. To have reversed the court's order and required the writ to issue only to reverse it on writ of error for insufficiency of facts to require an annulment of the judgment would have been a useless and meaningless procedure.

The trial of an issue raised on a writ of error *coram nobis* is not such a trial as puts the accused in a criminal case in jeopardy so that he may plead the annulment of the judgment in bar to another trial on the merits. The proceeding is civil in its nature and appellate proceedings lie from the judgment on *coram nobis* as in other cases. See 5 Ency. Pl. and Prac. 37.

This Court has followed that practice insofar only as to hold that a writ of error in criminal cases to such judgment lies in behalf of the defendant if the final judgment on the proceedings is against him but not in favor of the State to review the judgment if it is in favor of the defendant.

"The security of the State's judgment of conviction," said the Court, speaking through Mr. Justice WHITFIELD, "lies in the faith that the trial court will not grant a writ of error *coram nobis* except upon a proper and sufficient showing of essential facts duly made by competent legal and adequate evidence and by testimony under the oaths of the defendant and of counsel who are responsible to the court for the propriety of their action." See Lamb v. State, 91 Fla. 396, 107 South. Rep. 535.

In that case this Court, having affirmed the judgment of the trial court on the criminal charges against Lamb, granted permission to him to make application for a writ of error *coram nobis*. Now it is apparent in the language above quoted that the idea intended to be conveyed by the use of the phrase "grant a writ of error *coram nobis*" was a judgment duly entered on the issues presented in the *coram nobis* proceeding, because the mere granting of the writ does not of itself impair the security of the State's judgment of conviction. That security is impaired only after the trial court upon a proper and sufficient showing of essential facts duly made by legal and adequate evidence annuls the judgment of conviction. Other language in the opinion which may convey the idea that when in a proper case this Court grants permission to apply to the trial court for such a writ, "It *merely authorizes* the trial court to consider an application" (107 South. Rep. text 540, italics mine) for it is not consistent with what this Court has held in other cases that the appellate court will examine the petition to ascertain whether the facts alleged, admitting the same to be true, are sufficient in themselves to justify the annulment of the judgment. See Washington v. State, 92 Fla. 740, 110 South. Rep. 259; Chambers v. State, *supra*.

It is also true that the actual issuing of the writ is a

fiction.  The writ is presumed to issue on the fiat of the judge, but in fact does not.  See 5 Ency. Pl. and Prac. 36.

Insofar as the language in the cases cited is susceptible of a different meaning from that above set out it is disapproved and those cases upon that question overruled.

Now three ways are open for the trial of the issues: one by the common plea of *in nullo est erratum*.  That plea, as hereinbefore stated, admits the truth of the error assigned, but insists that in law it is not error.  See Godwin v. Sanders, 9 Yerg. (Tenn.) 91.

It is equivalent to a demurrer.  It in effect says that while the fact you allege is true it is not sufficient in law to effect an annulment of the judgment.  In a case like the one at bar, where this Court affirmed the judgment and allows the petitioner to apply for writ of error *coram nobis*, its judgment allowing such application determines the legal effectiveness of the alleged fact and directs the trial court to annul the judgment if the fact alleged is found to be true.  If it were not so the proceeding would be a farce, for the trial judge might hold the fact on such a plea to be insufficient.  On writ of error taken to that judgment this Court would either be bound to adhere to its former order allowing the application, thereby deciding the legal effectiveness of the admitted fact to annul the judgment, or it would be compelled to recede from its former pronouncement and hold with the trial judge.  So that way to test the legal sufficiency of the facts is obviously precluded in a case like this where the judgment sought to be annulled has been affirmed by the Supreme Court.

The next way open for the defendant in error is a traverse by plea and the taking of issue upon the allegation of fact in the application for this writ.

The third way is by special plea setting up any matter in confession and avoidance.

The special plea may be subject to demurrer by the plaintiff in error. The court by such demurrer would be called upon to determine whether the matter of fact set up by way of avoidance was in legal effect sufficient to avoid the alleged fact urged as the basis for the annulment of the judgment. If the demurrer was sustained the judgment was annulled. The third way to try the issues was by way of a traverse, a joinder of issue on the alleged fact. That plea was tried by a jury. See State v. Calhoun, 50 Kan. 523, 32 Pac. Rep. 38, 34 A. S. R. 141, 18 L. R. A. 838; Tyler v. Morris, 20 N. C. 625, 34 Am. Dec. 395 and note p. 396.

Mr. Justice VALENTINE, speaking for the Court in State v. Calhoun, *supra,* said in support of the proposition that in the trial of an issue of fact in a case of error *coram nobis* the plaintiff in error has the right of trial by jury; that the right rests fundamentally upon the guaranties secured by the Constitution of Kansas which in Section 10 provides that " 'In all prosecutions the accused shall be allowed to appear and defend in person or by counsel, to demand the nature and cause of the accusation against him, to meet the witness face to face, and to have compulsory process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense,' " and Section 18 provides that: " 'all persons, for injuries suffered in person, reputation, or property, shall have remedy by due course of law, and justice administered without delay.' "

Such rights are secured to the citizens of this State by the provisions of the Constitution of this State. See Section 3, Declaration of Rights, securing the right of trial by jury; Section 4, providing that all courts in this State shall be open so that every person for any injury done him in his

lands, goods, person or reputation shall have remedy by due course of law and right and justice shall be administered without sale, denial or delay, and Section 11, securing to the accused in all criminal prosecutions the right to a speedy and public trial by an impartial jury in the county where the crime was committed and to be heard by himself or counsel, or both, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, and have compulsory process for the attendance of witnesses in his favor, and to be furnished with a copy of the indictment against him. So in these essential particulars the two Constitutions are identical.

The learned justice said: "The accused had the right to be placed back in the same condition as he was before he entered his pleas of guilty. He had the right to be placed back in such a condition that he could avail himself of all the rights given to him by Sections 10 and 18 of the Bill of Rights of the Constitution."

The language of the judgment of the court was as follows:

"5. And, further held, that the question of the guilt or innocence of the accused in such case is not a necessary question to be determined in the case; that a mob cannot, by compelling a person accused of crime to plead guilty, and to be sentenced to imprisonment and hard labor in the penitentiary, so shift the burden of proof from the State to the accused as to compel the accused to prove his innocence, and to prove it by a preponderance of the testimony, and to relieve the State from proving his guilt, and from proving it by evidence sufficient to remove every reasonable doubt. The accused has the right to be placed back in the same condition as he was before he entered his plea of guilty."

That case was one in some respects similar to the one at bar in the matter of the conditions existing when the defendant, Calhoun, entered his plea of guilty. He was indicted for a serious crime, that of "defiling females under the age of eighteen years, committed to his care and protection, by carnally knowing them." The public mind became greatly excited and hostile to the accused. Threats of lynching were freely made and preparations to carry out the same were apparently going on. Knowledge of the threats were communicated to the accused who was in jail and such threats produced in his mind a state of fear so that to appease the passions of the community and secure himself from bodily violence he pleaded guilty of the charges contained in the indictments and was sentenced to the maximum limit of punishment, twenty-one years confinement in the penitentiary at hard labor in each case.

Seven years afterwards, having served that portion of his sentence, he brought proceedings in the nature of those known to the common law as writs of error *coram nobis* to revoke the sentences and set aside the plea of guilty. The issue upon the alleged fact of a plea of guilty under the influence of fear and intimidation was submitted to a jury which found in his favor on that issue and the sentences and pleas were annulled. The State took a writ of error and the Supreme Court affirmed the judgment annulling the sentences and pleas in an able and enlightening opinion of the justice whose words have been quoted.

The application for the writ in this case alleges that the four negroes, three of whom pleaded guilty and one not guilty, but all made alleged confessions of guilt, did so in such a state of mind, produced by a series of threats, intimidations and beatings while they were prisoners in the county jail that they may have felt that it was necessary to escape immediate danger to their lives to appease the senti-

ment which they were made to believe existed in the community against them, and if not in the community at least on behalf of a certain white man, not an official, but who had been permitted to enter the jail, communicate with the prisoners, take charge of and direct a sort of "third degree" examination of them, the details of which as related by the petition showed a most brutal and uncivilized treatment of them to create fear in them of bodily violence, even death, if they should not confess the murder of which they were accused.

The alleged practices of the white man who as alleged was permitted by the jail authorities to enter the jail at night and threaten the petitioners with violence and harass them with such personal abuses as keeping them awake at night and moving about from one place to another until they were faint and weary in body and spirit, in all of which it is asserted that the jail authorities participated and co-operated with that self-appointed teaser, are sufficient if believed by a jury to which the petitioners were entitled, to vitiate all the proceedings subsequent to the indictment.

Since the days when the law was given through Moses to the Israelites the oppression of the feeble who are weak and weary has been to this day an abomination in the sight of all civilized peoples, even in that small circle of them that vaingloriously deny the power of God. It is regarded as wicked and shamefully vile and the law recognizes it to be such by declaring that it vitiates judicial procedure where it is apparent; it taints the proceedings with a corruption and poison that defiles the court; despoils a person before the court of his constitutional guaranties of personal freedom and the equal protection of the laws. It makes of him a martyr to depravity, and of the court an instrument of cruel oppression.

In the case of Nickels v. State, 86 Fla. 208, 98 South. Rep. 502, this Court, speaking through Mr. Justice WHIT-FIELD, said: "A defendant who enters a plea of guilty upon a necessity produced by well-grounded fear and imminent danger of mob violence, may avoid the plea by a proceeding in the nature of a writ *coram nobis.*"

In the second report of the same case, Nickels v. State, 86 Fla. 208, 99 South. Rep. 121, this Court said: "A plea of guilty in a criminal prosecution should be entirely voluntary by one competent to know its consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence or ignorance and should be entered without a *semblance* of coercion and without *fear* or *duress* of *any* kind." (Italics mine.) I dissented from that broad statement of the rule. I said: "The element which vitiates the plea is that of constraint to plead guilty through fear of mob violence. If he pleads guilty in the secret belief that he stands a better chance for clemency by that plea than if he were to plead not guilty and risk a verdict of guilty by the jury without recommendation to mercy, the plea is not void" (text 236) but the Court did not agree to that statement of the rule, preferring the language quoted.

On the subject of extrajudicial confessions, Mr. Justice BUFORD, speaking for the Court in a most forceful opinion in the case of Deiterle v. State, 98 Fla. 739, 124 South. Rep. 47, recited the circumstances under which the alleged confession was made. The circumstances as there related are mild in their persuasive influence as to coercion in comparison with the circumstances as they were related by the accused persons in the present case, yet Mr. Justice BUFORD said: "If the statements alleged to have been made by the defendant during the course of the examination by the officers prior to the time that he was taken out to the room where Ollie Glass died were *freely* and *voluntarily* made,

then we labor under a misapprehension as to the meaning of the words."

The writer of this opinion dissented from the judgment in that case and said: "I find, however, nothing in the record to show that the confession he made was extorted from him by force or intimidation or promise of reward. He was advised of his rights and his confession was voluntary. It is said in the opinion that every effort was used except physical violence to overcome the will of the accused and induce him to make a confession. I do not agree to that statement, although it may be consistent with a perfectly legitimate examination of one charged with the commission of crime to obtain from him information as to his connection with it. Besides, all that is said to have happened concerning the alleged maltreatment of the accused is found only in his own statement."

The Court, however, held the alleged confession to be inadmissible and reversed the judgment. See the numerous citations with which the opinion is replete.

In the instant case no issue of fact was made upon the allegations of the application. The application for the writ was denied, the learned Circuit Judge delivering a lengthy opinion in which he summed up the evidence and stated his reaction to it and the conclusion he reached as to its probative force. In that section he undertook to take the part of a jury, assumed its function, and in effect reversed the implied decision of this Court as to the legal efficiency of the fact, assuming it to be proved in due course of a trial of the issue.

We are of the opinion therefore that the order denying the writ of error *coram nobis* was error so the judgment is reversed with direction to allow the writ and to proceed in accordance with the views expressed in the opinion.

Reversed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.