ISIAH CHAMBERS, JACK WILLIAMSON, CHARLES DAVIS & WALTER WOODWARD v. STATE.

167 So. 697.

En Banc.

Opinion Filed April 20, 1936.

*S. D. McGill,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, and *Ira A. Hutchison* and *Roy Campbell,* Assistants, for the State.

PER CURIAM.—This is the fourth time that the fate of these four young negro men has been presented to this court for its action thereon. The first case affirmed the conviction of first degree murder and the sentence of death imposed by the lower court. Chambers, *et al.,* v. The State, 151 So. 499, 111 Fla. 707. The second case was Chambers, *et al.,* v. The State, 152 So. 437, 111 Fla. 712, 113 Fla. 786. In that decision the court passed upon the sufficiency of an application to this court for leave to apply to the Circuit Court of Broward County for a writ of error *coram nobis,* addressed to the judgment of conviction. The petition filed in this court set forth in considerable detail charges of the use of force and violence in obtaining the confessions upon which the petitioners had been convicted and alleged that

said confessions were not freely and voluntarily given. This court held the petition sufficient and granted leave to present a petition for writ of error *coram nobis* to the Broward Circuit Court. In the opinion of Mr. Justice BUFORD it is stated that: "If the allegations of the petition are not true they may be traversed in due course in the court below, and thereupon the issue as to the truth of such allegations may be judicially determined."

The trial judge, when the petition was filed, proceeded to take testimony, and upon the testimony so taken held that the charges made were not true and denied the petition. An appeal was taken from this judgment, and this court, by a decision rendered on December 17, 1934, held that issues should have been made up in the court below between the petitioners and the State, by the filing by the petitioners of specific assignments of error, to which the State could either demur, thereby testing the legal sufficiency of such assignments, or traverse and take issue thereon, and that upon the issues made up between the parties, the petitioners were entitled to a trial by jury. The opinion on that appeal was written by Mr. Justice ELLIS. See Chambers, *et al.*, v. State, 117 Fla. 642, 158 So. 153.

After the case was remanded to the court below, the procedure outlined in the last mentioned decision was followed. The verdict of the jury was adverse to the petitioners and the court entered an order affirming the original judgments of conviction. To this judgment the present writ of error was addressed.

The assignments of error filed by the petitioners in the court below, on the trial of the writ of error *coram nobis*, were two in number. Omitting the formal introduction and conclusion, these assignments read as follows:

"1. That the confessions and pleas, filed at the trial of

these petitioners and which formed the basis of the judgments and sentences herein complained of, were not in fact freely and voluntarily made by these petitioners."

"2. That the confessions and pleas filed at the trial of these petitioners and which formed the basis of the judgments and sentences herein complained of were, in fact, obtained from these petitioners by force, coercion, fear of personal violence and under duress."

The charge of the court to the jury raises some serious questions, which were made the basis, in large part, of the motion for new trial, which motion was denied.

In his charge, the court correctly quoted both the first and second assignments of error and correctly quoted the issues made by such assignments and the traverse plea filed by the State. But thereafter in his charge, the court several times charged the jury on the second assignment of error, and the burden of proof with reference thereto, and ignored the first assignment except when he read to the jury requested charge No. 1, requested by the petitioners. Immediately after stating the assignments of error and the traverse, the court charged the jury that the sole issues, which they were to determine, were raised by the assignments of error filed by the petitioners and the traverse filed by the State thereto, and then said: "The allegations of the assignments of error are that the confessions" obtained from each of said petitioners and admitted in evidence on the trial of Isiah Chambers and the other defendants, and the pleas of guilty interposed by three of them "were obtained from each of said petitioners by force, coercion, fear of personal violence and under duress. To these assignments of error the defendant in error, the State of Florida, has filed pleas and traverses denying the allegations thereof and denying that such confessions and pleas were obtained

from the petitioners or either of them by force, coercion, fear of personal violence and under duress. *These allegations of coercion and physical abuse and the denial thereof constitutes the issues which you are to determine by your verdict."* (Italics supplied.)

All the way through the charge the court appears to have been of the opinion, several times reiterated, that the burden was upon the petitioners to prove, by a preponderance of the evidence, the allegations contained in their second assignment of error (that the confession and pleas were obtained by the use of force, coercion, fear of personal violence and under duress) and practically ignored the first assignment of error, except when giving petitioners requested charge No. 1, which he informed the jury was given at the request of counsel for petitioners.

A reading of the entire charge will show that the jury may very readily have understood the court to hold that unless the petitioners proved their second assignment of error, the jury should find against them, although the jury might have believed that the confessions were not in fact freely and voluntarily made, as charged in the first assignment of error. In fact the court in one of the closing paragraphs of the charge expressly charged the jury that:

"The court further charges you that the burden of proof rests upon each of the petitioners to establish by a preponderance of the evidence that his confession, and where a plea of guilty was entered, such plea was obtained by force, coercion, fear of personal violence and under duress, as charged in the assignments of error."

The trial judge also took occasion in his charge to state that the proceedings in the circuit court on the trial of the petitioner, Isiah Chambers, and the hearing by the court to determine the degree of guilt of the three petitioners who

had plead guilty, "was correct and orderly and such defendant, or defendants, was not deprived of any of his or their rights by the court." And in another place the court told the jury that the judgments of the court could not be lightly set aside, that an appeal had been taken by the defendants from the judgment of the court and such judgment had been affirmed by the Supreme Court of this State and that the defendants were bound by such judgments and must abide thereby unless from the present trial it should be determined that said confessions and pleas were entered under such circumstances as to cause the same to be null and void and of no force and effect. Then the court added: "In other words, the State relies to a certain extent upon the judgments of this court, and the burden of setting aside said judgments and holding the same for naught in this proceeding as to each of these petitioners is upon the said Izell Chambers, Jack Williamson, Charlie Davis, and Walter Woodward, and each of them."

We seriously doubt the correctness or propriety of these charges. They may have caused the jury to think that the petitioners were attacking the character and prestige of the court, whereas as explained by Mr. Justice ELLIS, in the last opinion rendered with reference to these petitioners, a proceeding on writ of error *coram nobis* is in no way a reflection upon the court which rendered the judgment attacked, but is in effect based on the proposition that if the facts set up in the petition and assignments of error had been known to the court at the time of the trial and judgment, the court would not have rendered the judgment which it did render.

It may be that the burden of proof in this case was upon the petitioners to establish to the satisfaction of the jury by a preponderance of the evidence the truth of the charges

made in at least one of their assignments of error, but the court should have gone no further and should not have said anything to lead the jury to believe that a verdict in favor of the petitioners would be any reflection upon the integrity or justness of the trial court which rendered the judgments under attack.

Counsel for plaintiffs in error earnestly contend that the burden of proof did not rest upon them and that the issues should have been submitted without any reference to the burden of proof. They cite a quotation from State v. Calhoun, 50 Kansas, 523, 32 Pac. 38, 18 L. R. A. 838, which case was cited and quoted from by Mr. Justice ELLIS when these petitioners were last before this court. We do not think that the opinion in State v. Calhoun, nor the quotation therefrom, sustains this contention. What the Kansas court had in mind was that in order to prevail, in a *coram nobis* proceeding, it was not necessary for the petitioners to prove their innocence; that "the question of guilt or innocence of the accused in such a case is not necessary to be determined; that a mob cannot by compelling a person accused of crime to plead guilty, and to be sentenced to prison and hard labor in the penitentiary, so shift the burden of proof from the State to the accused as to compel the accused to prove his innocence, and to prove it by a preponderance of the testimony, and to relieve the State from proving his guilt, and from proving it by evidence sufficient to remove every reasonable doubt. The accused has the right to be placed back in the same condition as he was before he entered his plea of guilty."

It is a question of considerable importance, but it is our opinion that the lower court was right in holding that the burden of proof was upon the petitioners to establish *to the reasonable satisfaction of the jury* (which italicized phrase

was left out of the charge) the truth of the facts alleged in at least one of their assignments of error.

When these petitioners were last before us, this court, speaking through Mr. Justice ELLIS, said:

"The proceeding is civil in its nature, and appellate proceedings lie from the judgment on *coram nobis* as in other cases. See 5 Encyc. Pldg. & Prac. (32) 37."

Even if the jury totally disbelieved the testimony of the petitioners, the testimony of Sheriff Walter Clark, and one or two of the other witnesses introduced by the State, was sufficient to show that these confessions were only made after such constantly repeated and persistent questioning and cross questioning on the part of the officers and one J. T. Williams, a convict guard, at frequent intervals while they were in jail, over a period of about a week, and culminating in an all night questioning of the petitioners separately in succession, throughout practically all of Saturday night, until confessions had been obtained from all of them, when they were all brought into a room in the jailer's quarters at 6:30 on Sunday morning and made their confessions before the State Attorney, the officers, said J. T. Williams and several disinterested outsiders, the confessions, in the form of questions and answers being taken down by the Court Reporter, and then typewritten.

Under the principles laid down in Nickels v. State, 90 Fla. 659, 106 So. 479; Davis v. State, 90 Fla. 317, 105 So. 843; Deiterle v. State, 98 Fla. 739, 124 So. 47; Mathieu v. State, 101 Fla. 94, 133 So. 550, these confessions were not legally obtained.

It is quite generally held in other jurisdictions that confessions which were made by persons in custody after prolonged and persistent examination by sheriffs or police officers are inadmissible in evidence on the ground that

confessions so obtained cannot be considered as freely and voluntarily made. See the cases, which are summarized in Rose's notes to the case of Ziang Sung Wen v. U. S., 266 U. S. I 69 L. Ed. 137; Purpura v. U. S. 262, Fed. 473; Perrygo v. U. S., 2 Fed. (2nd) 181; the recent case of Brown, *et al.*, v. Mississippi, 161 So. 465, 80 L. Ed. 479, 56 S. C. R. 461; and the following decisions by State Courts:

"California.—People v. Loper, 159 Cal 6, 112 Pac. 720, Ann. Cas. 1912B, 1193; People v. Borello, 161 Cal. 367, 37 L. R. A. (N. S.) 434, 119 Pac. 500; People v. Quan Gim Gow, 23 Cal. App. 507, 138 Pac. 918; People v. Clark, 55 Cal. App. 42, 203 Pac. 781.

"Georgia.—King v. State, 155 Ga. 707, 118 S. E. 368.

"Illinois.—People v. Vinci, 295 Ill. 419, 129 N. E. 193; People v. Sweeney, 304 Ill. 502, 136 N. E. 687.

"Louisiana.—State v. Albert, 50 La. Ann. 481, 23 So. 609.

"Michigan.—Flagg v. People, 40 Mich. 706, 3 Am. Crim. Rep. 70; People v. Wolcott, 51 Mich. 612, 17 N. W. 78; People v. Prestidge, 182 Mich. 80, 148 N. W. 347; People v. Brockett, 195 Mich. 169, 161 N. W. 991.

"Mississippi.—Ammons v. State, 80 Miss. 592, 18 L. R. A. (N. S) 768, 92 St. Rep. 607, 32 So. 9, 12 Am. Crim. Rep. 82.

"Missouri.—State v. Allis, 294 Mo. 269, 24 A. L. R. 682, 242 S. W. 952; State v. Powell, 258 Mo. 239, 167 S. W. 559, and, on further appeal, in 266 Mo. 100, 180, S. W. 851.

"Ohio.—Kohn v. State, 32 Ohio, C. C. 711.

"Texas.—Parker v. State, 46 Tex. Crim. Rep. 461, 108 Am. St. Rep. 1021, 80 S. W. 1008, 3 Ann. Cas. 893.

"Wisconsin.—Lang v. State, 178 Wis. 114, 24 A. L. R. 690, 189 N. W. 558."

Under our own cases, above cited, as well as these cases from the Federal and State Courts, the State's own evidence in this case strongly tends to the conclusion that these confessions were not in fact freely and voluntarily made, and were not, as is stated in one of our opinions, "the spontaneous expressions by these petitioners of their own guilt," and this issue, as made by the first assignment of error, should have been clearly submitted to the jury for its determination.

Reversed and remanded.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, J., dissents.

DAVIS, J. (dissenting).—This is the fourth time this case has appeared in this court. On its first appearance we affirmed the convictions on the record. Chambers v. State, 111 Fla. 707; 151 Sou. Rep. 499. On its second appearance we granted leave to apply to the Court below for a writ of error *coram nobis* to determine the truth of certain allegations that had been made concerning duress practiced on the defendants, or some of them. Chambers v. State, 111 Fla. 707, 152 Sou. Rep. 437. On its third appearance, after the Circuit Judge, sitting without a jury, had found none of the allegations of the convicted defendants to be true, we reversed his judgment for a new trial by jury. Chambers v. State, 117 Fla. 642, 158 Sou. Rep. 153. On its fourth appearance we are now asked to again reverse this case for another hearing and trial, despite the fact that three of the defendants plead guilty in open court to a horrible murder, while the fourth one of the quartet went to trial by jury and was found guilty of a capital offense, solely on an issue of whether or not, guilty though he was, he should be recommended to the court's mercy in order

that his life might be spared, and despite the fact also that the trial judge and two juries have passed upon and decided against the plaintiffs in error every allegation they have made to the effect that their confessions and pleas of guilty were not voluntary at the time they made them in open court in the presence of the Circuit Judge who carefully inquired into their validity before he allowed them to be considered.

This was a dastardly murder committed for robbery after having been thoroughly planned by the perpetrators. All of them freely admitted their connection with the affair. Their only defense is that one was the master mind, got most of the stolen money and therefore the remainder should not go to the electric chair. The money was found, together with the murdered man's pocket book, sewed up in a mattress where one of the defendants had told the officers he would find it. The club with which the old man was beaten to death in the night time as he walked from his place of business to his home was identified and traced to one of the defendants. The conclusion of guilt is overwhelming, and whatever duress was originally practiced in jail, is not shown to have found its way into open court where these defendants again fully confessed their horrible crime, blaming each other with being more culpable than they, in planning it in the first instance.

Since this case was first tried the Supreme Court of New Jersey and the Supreme Court of the United States have approved the conviction of Hauptmann, and he has been executed, notwithstanding the exhibition in that case of a kind of trial beside which this one is the model of judicial conservatism and excellence, even if we take as absolutely true every contention these defendants have made

as grounds for now having awarded to them a third trial for their offense.

It seems to me that the case has been honestly, fairly and impartially tried in the Circuit Court and that no further hearing or trial there should now be ordered, a conclusion I have reached and expressed with the utmost deference to my colleagues on the bench who think a further trial should be had. Accordingly I dissent.