ISIAH (ISEL) CHAMBERS, JACK WILLIAMSON, CHARLIE DAVIS, and WALTER WOODARD (WOODWARD), v. STATE.

187 So. 156.
Division A.
Opinion Filed March 3, 1939.

*Sideny J. Catts, Jr.,* and *S. D. McGill,* for Plaintiffs in in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

TERRELL, J.—This is the fifth time that different phases of this case have been adjudicated by us. Chambers, *et al.,* v. State, 111 Fla. 707, 151 So. 499; Chambers, *et al.,* v. State, 113 Fla. 786, 152 So. 437; Chambers, *et al.,* v. State, 117 Fla. 642; 158 So. 153; Chambers, *et al.,* v. State, 123 Fla. 734, 167 So. 697. A statement of the essential facts involved in each consideration is detailed with these citations.

The instant writ of error was to a final judgment against plaintiffs in error in the fourth trial, being upon error *coram nobis.* The sole question involved is whether or not certain confessions and pleas of guilty entered by defendants were their free and voluntary act, or whether they were extorted by force, coercion, fear, duress, and personal violence.

In the first writ of error, we affirmed the conviction of

all four defendants of murder in the first degree. On the second appearance, we granted them leave to apply to the trial court for writ of error *coram nobis* for the purpose of determining whether or not certain confessions made by them and on which they were convicted had been extorted from them by duress. The Circuit Judge tried and determined this issue against defendants and on writ of error to this Court the third time, we reversed this decision holding that the issue should have been tried by a jury. The cause was again remanded and tried before a jury but was reversed because of erroneous charges by the trial court.

The trial and determination of an issue joined on error *coram nobis* is one for the jury to resolve after hearing the evidence and appropriate charges by the Court in the same manner that other issues of fact are determined. This Court as well as the trial court is bound by the same rules of evidence and procedure in trying an issue of this kind that it is in the trial of other issues and under no circumstances should the province of the jury be invaded.

On the issue joined in this case, the evidence is in hopeless conflict. The defendants in their behalf testified that they were brutally treated and put through all sorts and kinds of third degree methods for about a week before the confessions were secured and on the last night before they confessed, they were not permitted to sleep but were threatened, whipped, and tortured all night. The confessions were secured about six o'clock the following morning. As to the charges of having been whipped, tortured, and ill treated, their testimony is not corroborated. It is corroborated as to the fact of having been kept up all night and questioned the night before the confessions were secured.

The evidence of defendants as to torture and cruel treat-

ment is flatly denied by the Sheriff, the jailer, and other witnesses. The latter testimony is corroborated by that of several prisoners who were in jail with defendants at the time, a telephone workman who was working about the jail, the State Attorney, who took the confessions, and other witnesses. All of the questioning took place in the jail.

The testimony of the plaintiffs in error, if taken alone, was ample to show that the confessions and pleas were secured through coercion, duress, and reprehensible means, but it was flatly denied and the denial was strongly corroborated. In this situation it became the function of the jury to resolve the conflict in the evidence and they resolved it against the defendants. Error in doing so is not made to appear.

Confessions such as are involved in this case are not deemed voluntary as a matter of law. To be admissible as evidence, they must be made by one competent to make them and they must not be induced by punishment, threats, or promises of reward. A confession is not vitiated by the fact that it was made to a Sheriff while the confessor was in custody after a protracted examination, provided the examination was orderly and properly conducted. If conducted otherwise, the confession is illegal and should be excluded from the jury.

Testimony to determine all these facts is permissible and if it shows that force, compulsion, or tender of reward was offered, the confession so obtained is inadmissible as evidence. Hopt v. People of Utah, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262; Sparf v. United States, 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343; Pierce v. United States, 160 U. S. 355, 16 Sup. Ct. 321, 40 L. Ed. 454; Wilson v. United States, 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090; Bram v. United States, 168 U. S.

532, 18 Sup. Ct. 183, 42 L. Ed. 568; Powers v. United States, 223 U. S. 303, 32 Sup. Ct. 281, 56 L. Ed. 448; and cases on other page. See decisions of many state courts to same effect in Chambers, et al., v. State, 123 Fla. 734, 167 So. 697.

We have reviewed the evidence carefully and find nothing that would warrant a reversal of the verdict and judgment of the trial court. The defendants were charged with the commission of a heinous crime; to-wit, the murder for robbery of Robert Darsey of Pompano, Florida. Some twenty-five or thirty persons were arrested on suspicion as being implicated in connection with this murder but all were ultimately released except defendants. All night vigils in proceedings of this kind are not approved but are not *ipso facto* illegal.

In lodging responsibility for slaying of Mr. Dorsey, against defendants and releasing the others who were arrested in connection with it, a great deal of questioning was done and the sheriff's office was vigilant in apprehending the guilty parties. It was one of those crimes that induced an enraged community and this fact goes far to explain the questioning and the fact that it was in progress several days and all night before the confessions were secured.

Two trial judges and two juries have decided all the material issues against the defendants. The gravamen of their defense seems to be that since one key man planned the robbery and secured most of the proceeds of it, all should not suffer the death penalty. This was a question for the jury to determine and they resolved it against the defendants after having an opportunity to recommend them to mercy. So far as the record discloses, defendants are shown to have been accorded a fair trial.

It is also concluded here that defendants were arraigned,

and put on trial without the appointment of counsel to represent them or without the opportunity to confer with counsel before trial.

This was not one of the issues before the jury and the record does not show a formal order of the trial court appointing counsel to represent defendants but it is shown that they were represented at the trial by able and experienced counsel who conferred with them before the trial. The fact that the record shows no formal order appointing counsel to represent them is not material but the better practice is that such an order should be shown.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.

THOMAS, J., not participating, because the case was submitted before he became a member of the Court.

BROWN, J. (dissenting).—While I have great respect for the ability and courage of the distinguished trial judge, as well as for the opinion of my eminent associates, I am of the opinion that the court below erred in overruling the motion of the petitioners for a new trial. My view is that the evidence in the case entitled the petitioners to a verd'ct in their favor upon the first assignment of error. This assignment charged that the confessions and pleas of these petitioners, which formed the basis of the judgments and sentences complained of, were not in fact freely and voluntarily made by the petitioners.

Insofar as the second assignment of error is concerned, I concur with the other members of the Court that the jury's verdict is sustained by the weight of the evidence. This second assignment of error charged that the confes-

sions of the petitioners were obtained by force, coercion, duress and fear of personal violence. Insofar as that assignment of error is concerned, I think the jury's verdict, which was adverse to the petitioners, was well founded. As to this very serious charge, Sheriff Clark and his deputies were, in my opinion, justly and properly vindicated.

' It is the first assignment of error, and the verdict of the jury thereon, which gives me serious concern. If there be any error in this case, on the part of the trial judge, it was in the denial of the motion for new trial in so far as said motion was based on the ground that, as to this first assignment of error, the verdict of the jury was contrary to the weight and probative effect of the evidence, in the light of the applicable law.

A great legal principle is at stake in this case.

Unquestionably, the trial of this case was very fairly and ably conducted. The trial judge was eminently fair, alike to the petitioners and to the State. His rulings upon questions of evidence and his charge to the jury were free from any error. The questions involved were so clearly and fairly presented to the jury that they could not possibly have misunderstood the issues of fact which they were called upon to determine, and the law applicable thereto.

The murder and robbery of the elderly Mr. Darsey at Pompano, Florida, some six years ago, was a most dastardly and atrocious crime. It naturally aroused great and well justified public indignation. The vigorous efforts of Sheriff Clark and his deputies to get at the facts and bring the guilty parties to the bar of justice are to be commended. At best, law enforcement officers have a difficult task to perform, and even when in their zeal they go somewhat beyond the bounds fixed by law in their efforts to obtain evidence sufficient to convict those whom

they have reason to believe have been guilty of some heinous offense, the public is reluctant to criticize or condemn them. Indeed, at the time, they are more likely to be praised. It is a matter of common knowledge that when some cruel and brutal crime is committed, public opinion and newspaper articles usually demand immediate solution of the ofttimes difficult problem of who are the guilty perpetrators, and also demands their prompt conviction and punishment. But there are certain rights of the individual, whether he be guilty or innocent, of crime, which have been for many years guaranteed to him, not only by the common law, but also by the constitutions and laws of the State and nation. One of the well settled rules designed to protect these rights is the rule of law that no person shall be compelled to be a witness against himself, and that no confession of a defendant can be introduced in evidence against him unless it was *freely and voluntarily* made, without any offer of reward or fear of punishment, or any semblance of duress or coercion. This principle was established as a natural result of the reaction against the rack, the thumb-screw and the torture chamber of the dark ages, which were used to compel men, frequently innocent, to confess guilt of crime, or to recant what were deemed to be statements of religious heresies.

Anything in the nature of third degree methods is not countenanced by the law in obtaining confessions. I do not say that third degree methods, strictly speaking, were used in this case. The jury manifestly did not think so. I do not believe that there was any physical torture or punishment visited upon these young negro men to force them to confess. The evidence to the contrary is too strong. But it is a well established principle of law that confessions which are obtained from persons in custody by prolonged and repeated and persistent examinations

and questionings by the officers of the law in whose custody they are, are inadmissible in evidence. Especially is this rule applicable where the acused is young and ignorant and not possessed of that intelligence and will-power which would enable him to cope successfully with his questioners. Furthermore, there was evidence in this case that by reason of the enormity of the crime involved there was some fear of mob violence, of which the petitioners were informed, and that these petitioners were taken from the jail in Fort Lauderdale by night to the jail in Miami, then brought back the next morning.

When this case was before us the last time, 123 Fla. 734, 167 So. 697, the case was reversed on account of an erroneous charge which this court held did not submit to the jury the question raised by the first assignment of error; that is, whether or not the confession and pleas of guilty were freely and voluntarily made. However, as showing the materiality of this error, this court did make some comment upon the testimony, which comment was as follows:

"Even if the jury totally disbelieved the testimony of the petitioners, the testimony of Sheriff Walter Clark, and one or two of the other witnesses introduced by the State, was sufficient to show that these confessions were only made after such constantly repeated and persistent questioning and cross-questioning on the part of the officers and one J. T. Williams, a convict guard, at frequent intervals while they were in jail, over a period of about a week, and culminating in an all-night questioning of the petitioners separately in succession, throughout practically all of Saturday night, until confessions had been obtained from all of them, when they were all brought into a room in the jailer's quarters at 6:30 on Sunday morning and made their confessions before the state attorney, the of-

ficers, said J. T. Williams, and several disinterested out-siders, the confessions, in the form of questions and an-swers, being taken down by the court reporter, and then typewritten.

"Under the principles laid down in Nickels v. State, 90 Fla. 659, 106 So. 497; Davis v. State, 90 Fla. 317, 105 So. 843; Deiterle v. State, 98 Fla. 739, 124 So. 47; Mathieu v. State, 101 Fla. 94, 133 So. 550, these confessions were not legally obtained.

"It is quite generally held in other jurisdictions that con-fessions which were made by persons in custody after pro-longed and persistent examination by sheriffs or police officers are inadmissible in evidence on the ground that confessions so obtained cannot be considered as freely and voluntarily made." (Citing numerous authorities.)

While there was some differences in the testimony on this trial from that with reference to which the above com-ment was made, the testimony of Sheriff Clark remains substantially the same. He did not remember some of the details testified to on the preceding trial, which was perfectly natural in view of the length of time which had elapsed, but his testimony on both trials impresses the writer with having been very frank and candid. On this trial, Sheriff Clark said that he and his assistants did not devote all of Saturday night to the questioning of these four men; that several others were questioned; that he began the examination in the late afternoon, and then took an hour or so off for supper and then another recess about the middle of the night, for an hour or an hour and a half; that he had these men brought, one at a time, to the jailer's quarters, where the examinations took place, which separate examinations would not last more than fifteen to twenty-five minutes; that the total questioning of any one man during the whole night did not amount to more

than two to three hours, and that they had time to sleep and rest between questionings. But his testimony and that of the other State's witnesses, does show frequent examinations throughout the week and a very persistent questioning and cross-questioning of these petitioners at frequent intervals during a large part of Saturday night, until the confessions were obtained early the following Sunday morning.

It might be said that these comments quashed from our former opinion related to confessions made out of court, and that this does not lessen the force of the fact that three of these petitioners, sharply thereafter, pleaded guilty in open court. The fourth, Isiah Chambers, pleaded not guilty and went to trial and was convicted, the confessions of the other three being used against him.

Undoubtedly, a plea of guilty interposed by a defendant in open court is presumptively free and voluntary. But having just shortly before, confessed their guilt before the officers of the court, it might well be said that their pleas of guilty were made as a result of such confessions, and that if such confessions were not freely and voluntarily made, neither were their pleas of guilty. When this case was here on petition for leave to apply to the trial court for writ of error *coram nobis,* this court speaking through Mr. Justice BUFORD (111 Fla. 707, 717, 152 So. 437, 438) said:

"It is true that the record and stenographer's report of the testimony taken at the trials, which are made a part of the petition presented to this Court, show that each of the witnesses to whom it was alleged that the extra-judicial confessions were made each testified that "at the time" of the alleged confessions there was no force or coercion used to procure the confessions but they did not make it clearly appear that force and coercion had not been used

prior thereto, which force and coercion' resulted in such confessions.

"It is also true that each of the defendants testified on the trial that the confessions were freely and voluntarily made and that the respective statements of each made upon the trial was the free and voluntary statement of such defendant as a witness in his behalf, but if it is a fact, as alleged in the petition, that these petitioners were coerced, threatened and frightened in such manner as to cause them against their will to make such statements at that time they come clearly within the purview of the law as announced in the cases of Nickels v. State, *supra,* and Washington v. State, *supra.*

"If the allegations of the petition are not true, they may be traversed in due course in the court below and thereupon the issues as to the truth of such allegations may be judicially determined."

In Nickels v. State, 86 Fla. 208, 99 So. 121, this Court held that:

"A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance. Accordingly, it will not bind the defendant where it is entered through intimidation; however slight; and a judgment is not properly entered on it where the court does not satisfy itself of the voluntary character of the plea."

And in Casey v. State, 116 Fla. 3, 156 So. 282, this Court held that:

"Plea of guilty to serious criminal charge should be freely and voluntarily made and entered by accused without semblance of coercion and without fear or duress of any kind.

"When plea of guilty was entered by ignorant young

man charged with capital offense, and evidence as to whether plea was entered through fear, duress, misunderstanding or improper influence was in hopeless conflict, accused should be allowed to withdraw guilty plea and proceed to trial on not guilty plea."

In Coffee v. State, 25 Fla. 501, 511, 6 So. 493, 496, this Court said:

"It is a rule of law that the confessions of parties charged with crime should be acted upon by courts and juries *with great caution*. 1 Greenleaf on Evidence, Section 200.

"The wisdom of this rule cannot be questioned, for the reason that, notwithstanding the confessions of persons accused of crime have been held to be evidence of the very highest character, upon the theory that no man would acknowledge that he had committed a grave crime unless he was actually guilty, but experience teaches that this theory is a fallacy, for it is a fact that numbers of persons have confessed that they were guilty of the most heinous crimes, for which they suffered the most horrible punishments, and yet they were innocent.

"In the sixteenth and seventeenth centuries, in enlightened England, men and women confessed that they were guilty of witchcraft—communion with evil spirits, and suffered at the stake therefor, and at this day men through fear of personal punishment, or through hope of averting such punishment, confess that they are guilty of crime, without the slightest foundation in truth for such confession, and for these reasons we say that the theory that men will not confess to the commission of crimes of which they are innocent, is a fallacy.

"There is another rule of law, and it has its foundation in *justice*, and that is, that when a confession has, in the first place, been made under illegal influences, such in-

fluences will be presumed to continue and color all subsequent confessions, unless the contrary is *clearly shown.*"

It *may be* that these four petitioners are in fact all guilty, and that they would be so found by a jury if this case should be remanded for a trial on the merits, without the confessions being introduced in evidence. But the guilt or innocence of these petitioners is not the question before us. The question here is, whether, on the testimony in this *coram nobis* case, the verdict of the jury, finding, in effect, that the confessions and pleas of guilty of these petitioners were freely and voluntarily made, should have been set aside by the trial judge on motion for new trial.

My view is that the verdict of the jury was contrary to the weight and probative force of the evidence on this point, and that the court below should have granted the motion for new trial. I have reached this conclusion with some reluctance, in view of the fact that the issues were fairly and squarely presented to the jury, and both trial and appellate courts are both to set aside the findings of juries on disputed questions of fact. And in this case, the learned trial judge, who heard the witness testify declined to disturb the verdict.

But in this instance I have based my conclusion upon the testimony of the State's witnesses alone. Taking the facts established by the State's own testimony, considered in the light of the applicable principles of law, my conclusion is that these confessions and pleas were not "freely and voluntarily" made.